860 A.2d 88

COMMONWEALTH of Pennsylvania, Appellant

v.

Tyrone MOORE, Appellee.

Commonwealth of Pennsylvania, Appellee

v.

Tyrone Moore, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 30, 2002.

Decided Oct. 21, 2004.

Petition for Reargument Denied
Jan. 18, 2005.

280

282

284

David W. Lupas, Wilkes Barre, Scott Charles Gartley, Kingston, Frank P. Barletta, Hazleton, Amy Zapp, Harrisburg, James L. McMonagle, Wilkes Barre, for Com. of PA.

Billy Horatio Nolas, Philadelphia, Enid Wolfe Harris, Wilkes Barre, for Tyrone Moore

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

The Commonwealth appeals from the order vacating Tyrone Moore's death sentence and granting him a new penalty hearing under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. Moore cross-appeals from the denial of his remaining claims for relief under the PCRA.

In 1983, a jury found Moore guilty of first degree murder, conspiracy, robbery, theft by unlawful taking, and recklessly endangering another person. At the penalty hearing, the jury found two aggravating circumstances,[1] no mitigating circumstances, and fixed the penalty for the murder at death. This Court affirmed on direct appeal. *Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119 (1993), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995).

Moore filed a timely PCRA petition, in which his principal claim was appellate counsel's ineffectiveness for failing to present on direct appeal relevant facts showing trial counsel should have presented mitigating evidence during the penalty phase. He raised thirteen other issues as well.[2]

1. Moore committed the killing while perpetrating a felony, 42 Pa.C.S. § 9711(d)(6), and in the commission of the offense Moore knowingly created a grave risk of death to another person in addition to the victim, *id.,* § 9711(d)(7).

2. Moore's other issues were:

1. Whether Moore's rights under the Sixth, Eighth and Fourteenth Amendments were violated when, although made aware of a conflict between Moore and defense counsel, the trial court failed to hold a hearing and permitted the trial to proceed with conflicted counsel.
2. Whether Moore's appearance at trial branded him with an unmistakable mark of guilt in violation of the Sixth, Eighth and Fourteenth Amendments.
3. Whether the prosecutor improperly argued the jury could find specific intent to commit first degree murder based on a finding of participation in the robbery, and the court failed to correct this error.
4. Whether Moore's death sentence must be vacated because the sentencing jury was never instructed that, if sentenced to life, Moore would be ineligible for parole.
5. Whether the jury's sentencing verdict is ambiguous as to the aggravating circumstance or circumstances found, rendering the verdict unreliable and depriving Moore of meaningful appellate review, in violation of the Eighth and Fourteenth Amendments.
6. Whether defense counsel conceded a nonexistent aggravating circumstance; told the jury that if sentenced to death, Moore would not commit any more robberies or murders; told the jury that the case would be appealed; and failed to argue any mitigating circumstances, constituting an ineffective closing argument at the penalty phase.
7. Whether the trial court failed to take protective measures to combat the pervasive, inflammatory publicity about this case, and counsel were ineffective for failing to renew their motion for change of venue, in violation of the Sixth, Eighth and Fourteenth Amendments.

The PCRA court held a hearing solely on the issue of appellate counsel's failure to proffer the mitigating evidence trial counsel should have presented at the penalty phase. The court concluded appellate counsel was ineffective for failing to present such evidence; it reversed the death sentence and remanded for a new penalty hearing. The court did not address Moore's remaining issues, which were deemed denied without a hearing. This appeal followed.

■ In reviewing an order granting or denying post conviction relief, we examine whether the PCRA court's determination is supported by the evidence and whether it is free of legal error. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1176 (1999). To be entitled to relief under the PCRA, Moore must show, as to each claim, that "the allegation of error has not been previously litigated or waived," 42 Pa.C.S. § 9543(a)(3), and that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." *Id.*, § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which the

8. Whether relief is appropriate because of error under *Brady v. Maryland* and related errors.

9. Whether Moore is entitled to relief from his death sentence because the jury imposed death based on its finding of the nonstatutory aggravating circumstance of "reckless endangerment" and because the statutory "grave risk of death to another" aggravating factor is vague and overbroad in violation of the Sixth, Eighth and Fourteenth Amendments.

10. Whether the death sentence was unconstitutionally infected by nonstatutory aggravation regarding Moore's prior convictions.

11. Whether the trial court's penalty phase instruction that the jury's verdict must be unanimous was misleading and coerced the jury to return a death verdict, in violation of the Sixth, Eighth and Fourteenth Amendments.

12. Whether Moore was denied his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments when the trial court impermissibly restricted *voir dire,* and trial counsel were ineffective for failing to rehabilitate a juror challenged by the Commonwealth, failing to life qualify jurors, and accepting biased jurors.

13. Whether errors and omissions on the part of defense counsel during the guilt phase denied Moore his constitutional right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments.

Moore's Brief, at 2–3.

288

petitioner could have had review as a matter of right has ruled on the merits of the issue...." *Id.,* § 9544(a)(2).

The record reveals issues 1, 2, 5, 7, 10, and 11, as well as portions of issues 6 and 9, have been previously litigated. "[P]ost-conviction review of claims previously litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and by presenting new theories of relief to support previously litigated claims." *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121, 123 (1994); *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001) (same); 42 Pa.C.S. § 9543(a)(3). Moore's arguments for these issues are nothing but retooled versions of his arguments on direct appeal; as such, they are previously litigated and he is not entitled relief.

Moore's remaining issues assert trial counsel's ineffectiveness during the guilt and penalty phases, as well as appellate counsel's ineffectiveness for failing to raise these issues on direct appeal. Any alleged error during the guilt and penalty phases has been waived because of trial counsel's failure to raise it; Moore may still obtain relief for trial counsel's ineffectiveness if he can show appellate counsel was ineffective for failing to pursue the claims. *See Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003) (citing *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) (when court is faced with "layered" ineffectiveness claim, only viable ineffectiveness claim is that related to most recent counsel, appellate counsel)).

We set forth the standard for preserving "layered" ineffectiveness claims in *McGill* and *Rush:*

In order to preserve a claim of ineffectiveness, a petitioner must *"plead,* in his PCRA petition," that appellate counsel was ineffective for failing to raise all prior counsel's ineffectiveness. Additionally, a petitioner must *"present* argument on, i.e. develop each prong of the [*Commonwealth v.*] *Pierce* [, 515 Pa. 153, 527 A.2d 973 (1987)] test" as to appellate counsel's deficient representation. "Then, and only then, has the petitioner preserved a layered claim of ineffective-

ness for the court to review; then, and only then, can the court proceed to determine whether the petitioner has proved his layered claim."

*Rush,* at 656 (citations and footnote omitted); *see also McGill,* at 1021–23.

The *"Pierce* test" requires Moore to prove, with respect to appellate counsel's performance, that: (1) the underlying claim of trial counsel's ineffectiveness has arguable merit;[3] (2) appellate counsel had no reasonable basis for failing to pursue the claim; and (3) but for appellate counsel's ineffectiveness, the result on direct appeal would have differed. *See McGill,* at 1022–23. This "performance and prejudice" test was first enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was recognized in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), as the proper test under the Pennsylvania Constitution. Failure to address any prong of the test will defeat an ineffectiveness claim. *Basemore,* at 738 n. 23 (citing *Rollins,* at 441) (ordinarily, post conviction claim of ineffective assistance of counsel may be denied by showing petitioner's evidence fails to meet single one of three prongs for claim).

Moore has met the pleading requirement for his remaining issues, as he alleged the ineffectiveness of both trial and appellate counsel in his PCRA petition, as well as in his appellate brief. He also presents argument concerning his underlying claims of trial error and trial counsel's ineffectiveness, satisfying the first prong of *Pierce* with respect to appellate counsel. However, he fails to develop the remaining two prongs concerning appellate counsel's stewardship; thus,

---

**3.** An assessment of this prong requires Moore to establish each *Pierce* prong with respect to trial counsel's performance; failure to establish any one of the prongs will defeat the entire claim. *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000) (citing *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 441 (1999)). This "merit" prong has been referred to as containing a "nested" argument—trial counsel's performance must be addressed in order to determine whether appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness. *See Rush,* at 656.

he has failed to preserve his claims of appellate counsel's ineffectiveness as required by *McGill.*

In cases where the appellant has established the arguable merit of his underlying claim of trial counsel's ineffectiveness, remand may be warranted for the opportunity to correct his deficient pleading of the remaining two prongs regarding appellate counsel's ineffectiveness. *Rush,* at 657. "Nevertheless, there is simply no need to remand a PCRA petition when the petitioner has not carried his *Pierce* burden in relation to the underlying claim of trial counsel's ineffectiveness, since even if the petitioner were able to craft a perfectly layered argument in support of his claim, the petitioner's claim would not entitle him to relief." *Id.,* at 657–58, 838 A.2d 651. Thus, we need not remand if Moore has not met his burden of proving the underlying trial counsel ineffectiveness.

Moore's first claim regarding the guilt phase is that the prosecutor improperly argued the jury could find specific intent to commit murder based on Moore's participation in the robbery, even if Moore had not been the shooter. In closing, the prosecutor stated:

> [L]et's say [Moore] did everything that [co-conspirator] Ricardo Scott said he did, except fire the shot. Under those circumstances, ladies and gentlemen, if the Commonwealth has established beyond a reasonable doubt that he was there, that Tyrone Moore in fact participated in the robbery, that he was part of this plan, then I submit to you we have already found him guilty of the crimes charged beyond a reasonable doubt. It is not necessary for the Commonwealth to establish Mr. Moore as the shooter to find him guilty of murder. That is not the law.

N.T. Trial, 9/12/83, at 645.

Moore argues both trial and appellate counsel were ineffective for failing to challenge this error; however, there was nothing improper about the prosecutor's statement in the context in which it was made. Moore was charged generally with criminal homicide; he could have been found guilty of second or third degree murder, not just first degree murder.

The prosecutor was merely explaining how the jury could find Moore guilty of second degree murder; he went on to argue that the evidence established Moore was the shooter, so the jury could find him guilty of first degree murder. *See id.*, at 645–47. The trial court instructed the jury concerning all levels of criminal homicide and clearly stated that to convict Moore of first degree murder, they had to find he had killed the victim and that he had done so with specific intent. *Id.*, at 661–67. Accordingly, trial counsel was not ineffective for failing to object to the prosecutor's statement. As this claim is meritless, Moore's claim of appellate counsel's ineffectiveness is necessarily defeated as well. *McGill*, at 1023. Therefore, we need not remand to review the remaining two prongs of *Pierce* with respect to appellate counsel. *See Rush*, at 657–58; *McGill*, at 1025.

In his second guilt phase issue, Moore alleges the Commonwealth failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he claims the Commonwealth coerced the false testimony of two witnesses, intimidated another witness into not testifying, paid witnesses for their testimony, and failed to reveal the extent of the incentives offered in one witness's plea agreement. While other evidence may have been helpful to Moore's case, in the end, none of this evidence as alleged tends to prove Moore's innocence of the crime; Moore only attempts to smear the Commonwealth's case by these averments of misconduct. The PCRA court rejected these claims without a hearing, and we perceive no abuse of discretion in its doing so. Accordingly, neither trial nor appellate counsel were ineffective for failing to raise this issue, *McGill*, at 1023, and remand for further development of it is unnecessary. *Rush*, at 657–58; *McGill*, at 1025.

Moore next alleges various errors during jury selection. Moore claims the trial court improperly sustained an objection to defense counsel's attempt to ask a prospective juror whether she had been in the company of people who expressed an opinion about Moore's guilt. However, the

record reveals this juror stated she had no fixed opinion concerning Moore's guilt or innocence, she would be able to keep an open mind and make a determination only after having heard all of the evidence, and she was not prejudiced against Moore because of his race. N.T. Voir Dire, 9/12/83, at 7–10. Accordingly, Moore was not prejudiced by the trial court's ruling, or the manner in which *voir dire* of this juror was conducted; therefore, trial counsel was not ineffective for failing to challenge the court's ruling.

■ Moore claims trial counsel should have "life qualified" the jury. However, "although such questions are permissible, they are not required and counsel is not ineffective for failing to pose them." *Commonwealth v. Hardcastle,* 549 Pa. 450, 701 A.2d 541, 543 (1997) (citing *Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199 (1994)). This claim is meritless.

■ Moore claims trial counsel was ineffective for not attempting to rehabilitate a juror who the Commonwealth challenged for cause because she stated she could not impose the death penalty. However, Moore does not allege that but for counsel's failure to rehabilitate this juror, the result at trial would have differed. Having failed to demonstrate prejudice, Moore is not now entitled to relief.

■ Moore claims trial counsel should not have accepted jurors whose answers revealed potential bias; he alleges the racial bias of one juror, and points to the fact that another juror had a family member in law enforcement and a third juror's family member had been the victim of a crime. However, the one juror's reference to the fact he had a "colored" gentleman for a roommate does not amount to racial bias; the juror offered this fact as support for his statement that the races of the victim and Moore would have no effect on him. N.T. Voir Dire, 9/12/83, at 83. The juror whose brother was a police officer stated that fact would not influence her decision, *id.,* at 111, and the juror whose brother had been a crime victim said she did not think it would prevent her from being fair and impartial. *Id.,* at 140. Trial counsel cannot be said to be ineffective for accepting these jurors. As none of Moore's

claims regarding trial counsel's ineffectiveness in connection with jury selection entitle him to relief, his claims of appellate counsel's ineffectiveness fail, *see McGill,* at 1023, and there is no need to remand. *Rush,* at 657–58; *McGill,* at 1025.

Moore's final guilt phase issue cumulatively alleges various errors and omissions by trial counsel: failing to impeach two witnesses with prior inconsistent statements, failing to investigate the Commonwealth's alleged coercion of these witnesses and intimidation of another witness, failing to call a co-conspirator as a witness, failing to object to testimony which inaccurately suggested a certain witness had identified Moore, conceding the strength of the prosecution's identification evidence, and failing to impeach a witness with *crimen falsi* convictions and the extent of the incentives in his plea agreement. The claims concerning counsel's failure to impeach witnesses, as well as the failure to investigate the alleged intimidation and coercion of witnesses, are retooled versions of Moore's unsuccessful *Brady* claims. The remaining allegations of trial counsel's error do not rise to the level of prejudice requiring reversal of Moore's conviction; he fails to demonstrate the result at trial would have differed but for counsel's performance. Because Moore is not entitled to relief on his claim concerning trial counsel's ineffectiveness, his claim of appellate counsel's ineffectiveness fails, *McGill,* at 1023, and remand is unnecessary. *Rush,* at 657–58; *McGill,* at 1025.

With respect to the penalty phase, the Commonwealth alleges the issue of trial counsel's failure to present mitigating evidence was previously litigated on direct appeal, and therefore the PCRA court erred in granting Moore relief on this claim.

On direct appeal, Moore alleged trial counsel was ineffective for failing to present mitigating evidence, but appellate counsel was unable to specify what that evidence was. Instead, counsel requested an evidentiary hearing as an investigative tool, to establish what mitigating evidence could have been

presented. This Court denied counsel's request, and concluded trial counsel was not ineffective:

> *[M]uch of appellant's argument improperly refers to information outside the record. To the extent that appellant finds support in the record for his arguments, such support is clearly insufficient to support a finding of ineffectiveness.* Rather, the record clearly reveals that appellant received zealous and competent representation throughout these proceedings under the circumstances.
>
> * * *
>
> Presumably, counsel would likely be found ineffective in an instance where they failed to obtain evidence in mitigation reasonably available or failed to conduct a reasonable investigation. In such an instance, it would be readily apparent that counsel were just going through the motions during the penalty phase, especially where no evidence in mitigation is presented.... [S]uch is not the case here.
>
> Obviously, just as there are cases where evidence in mitigation exists, there are those instances where no evidence in mitigation exists or is obtainable by reasonable means. Thus, the mere fact that [Moore's] trial counsel presented no specific evidence in mitigation does not render their performance ineffective.... *[T]he record reveals that defense counsel made substantial efforts on appellant's behalf in this case, and they cannot be faulted for the lack of available mitigating evidence given the circumstances present, which included the failure of any member of appellant's own family to appear after being served with subpoenas. Trial counsel made zealous argument in mitigation of appellant's crime during the penalty phase given the limited evidence in mitigation, and appellant fails to advise this Court what mitigating evidence could have been offered.*

*Moore*, at 1134–35 (emphasis added).

Because appellate counsel did not specify what evidence could have been offered, this Court could not conclude on the record before it, that trial counsel was ineffective. Thus, the

issue of trial counsel's ineffectiveness was addressed on direct appeal.

Before the PCRA court, Moore argued appellate counsel's ineffectiveness for failing to supplement the record to include what was missing—the mitigating evidence available at the time of trial. Thus, Moore's claim is not the traditional "layered" ineffectiveness claim where the underlying claim of trial counsel's ineffectiveness has been waived and only exists in relation to the "merit prong" regarding appellate counsel's performance.[4] Rather, the claim of trial counsel's ineffectiveness was decided adversely to Moore, and he now contends appellate counsel was ineffective in this regard. In other words, Moore alleges, but for appellate counsel's failure to advise this Court of what mitigating evidence trial counsel should have presented, he would have prevailed on his claim of trial counsel's ineffectiveness. As such, the claim of appellate counsel's ineffectiveness was not previously litigated.[5]

Having concluded Moore's claim was properly before the PCRA court, we must determine whether he has established all three prongs of the *Pierce* test regarding counsel's performance. Complicating this matter, appellate counsel, who was the first counsel to represent Moore after trial counsel, was obliged to raise trial counsel's ineffectiveness on direct appeal, *see Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977) (ineffectiveness claims must be raised at time

4. "[W]hen a court is faced with a 'layered' claim of ineffective assistance of counsel, the only viable ineffectiveness claim is that related to the most recent counsel, appellate counsel." *Rush,* at 656. *See also McGill,* at 1022 (defining traditional "layered ineffectiveness": only claim of counsel's ineffectiveness that PCRA counsel may raise is that of appellate counsel's ineffectiveness for failing to raise, on direct appeal, claim of trial counsel's ineffectiveness).

5. This situation is distinguishable from one where ineffectiveness is alleged and a new theory is presented in support of a previously litigated claim. *See Peterkin,* at 123. Moore's claim is based on the fact there was *no* mitigating evidence presented at the penalty phase; therefore, this issue does not rest solely upon previously litigated evidence. *See Commonwealth v. Miller,* 746 A.2d 592, 602 nn. 9 & 10 (Pa.2000) (where claim involving evidence involves other previously unchallenged evidence, claim was not previously litigated and merits will be reached).

defendant gets new counsel, or they are waived), even though there was no record of what mitigating evidence was available to trial counsel. Appellate counsel did not have the benefit of this Court's ruling in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) (overruling *Hubbard* to extent it requires trial counsel's ineffectiveness be raised at time when petitioner obtains new counsel; petitioner should wait to raise claims of trial counsel's ineffectiveness until collateral review). Therefore, in order to preserve the issue of trial counsel's ineffectiveness, appellate counsel *had* to raise it on direct appeal; however, as the PCRA court noted, he did not point to any evidence outside the record which trial counsel should have offered.

On collateral review, although the PCRA court did not have the benefit of this Court's decision in *Grant*, its decision did what *Grant* sought to achieve; it heard testimony concerning the evidence actually available to trial counsel, heard testimony from both trial and appellate counsel, made credibility determinations, and assessed trial counsel's stewardship under the three *Pierce* prongs.[6] This is indeed the better practice, since "the role of an appellate counsel is to review the record for claims of error, but not necessarily to uncover extra-record claims.... '[B]ecause there is no constitutional requirement for appellate counsel to search outside the record for error, an ineffective assistance of appellate counsel claim that is in substance a trial counsel claim requiring extrinsic evidence may be dead on arrival.'" *Id.*, at 736–37 (quoting *Woods v. State*, 701 N.E.2d 1208, 1222 (Ind.1998)). Accordingly, we turn to the PCRA court's review of Moore's claim that trial counsel was ineffective for failing to present mitigating evidence.

**6.** Although the PCRA court concluded "appellate counsel was ineffective in not following proper appellate procedure which would have allowed the Supreme Court to consider matters outside the record ...," PCRA Court Opinion, 9/22/00, at 4, the court did not conduct the "performance and prejudice" analysis mandated by *Pierce* with respect to appellate counsel. However, in light of the evidence produced at the PCRA hearing and the PCRA court's conclusions based on this evidence, we need not remand for further analysis of appellate counsel's stewardship.

 It is well settled that failure to present mitigation evidence, without more, is not ineffective assistance *per se. Commonwealth v. Beasley,* 544 Pa. 554, 678 A.2d 773, 778 (1996) (citing *Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513, 531 (1988)). At the penalty phase, trial counsel told the court at sidebar that, after discussion with counsel, Moore did not wish to testify concerning mitigating circumstances. N.T. Trial, 9/12/83, at 713. Counsel also stated he was unaware of where Moore's then-wife was, Moore's sister was no longer present in the court room, and he had not heard from any of Moore's family or friends. *Id.* Thus, counsel concluded, "We have really nothing to offer by way of opening or argument evidence, just closing argument." *Id.* During closing, defense counsel argued, "there may be mitigating circumstances in this case ...," *id.,* at 723, but did not detail what these might have been.

At the PCRA hearing, Moore's mother, sister, and ex-wife testified concerning Moore's traumatic and abusive childhood, including witnessing his father slash his mother's throat. While this may or may not be perceived as mitigating (one juror might see this as reason for sympathy; another might see it as assuring Moore his violence permanently ingrained in him), the reason it was not provided was not strategic, and we cannot disagree with the PCRA court's determination that the jury should have been given this.

These witnesses further testified they would have testified at the penalty phase. The PCRA hearing brought to light the fact Moore's mother was not subpoenaed, but that she would have testified at the penalty phase, had trial counsel explained to her the proceeding and the significance of her testimony. N.T. PCRA Hearing, 1/25/00, at 472–86. Moore's sister, although not subpoenaed, was present at trial; however, she was not told prior to trial that she might be needed to testify. *Id.,* at 494. Trial counsel did not approach her until a recess during the guilt phase, and never explained to her that she would be needed for the penalty phase which would begin the next day. *Id.,* at 498–500. Consequently, she left at the end of the guilt phase, unaware of the nature of the penalty phase

and the need for her testimony. *Id.*, at 500–06, 509–11. Moore's ex-wife was subpoenaed to present alibi testimony at the guilt phase, but did not appear. *Id.*, at 516–17, 525, 535. However, trial counsel never told her she could testify at the penalty phase or explained the nature of the proceeding to her. *Id.*, at 518, 521–22. She testified that, although she "had [her] reasons," *id.*, at 530, for not giving alibi testimony at the guilt phase, she would have given mitigating testimony at the penalty phase, had the proceeding and the significance of her testimony been explained to her. *Id.*, at 524, 526, 531–34.

These witnesses were obviously more cooperative in 2000 than in 1983, and we sympathize with trial counsel's frustration with them. However, the PCRA court found these witnesses credible, PCRA Court Opinion, 9/22/00, at 9, and we will not disturb its determination as fact finder.[7] *See Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 93–94 (1998) (this Court is bound by PCRA court's credibility determinations where there is record support for those determinations).

Thus, the record from the PCRA hearing reveals: (1) these witnesses existed; (2) they were available to testify at the penalty phase; (3) trial counsel knew of their existence; (4) they were prepared to cooperate and would have testified at the penalty phase; and (5) the absence of their testimony prejudiced Moore. *See Commonwealth v. Crawley*, 541 Pa. 408, 663 A.2d 676, 679–80 (1995) (test for ineffectiveness for failure to present witnesses). Mitigating evidence is a crucial part of the penalty phase, and trial counsel's failure to present any evidence, particularly in the face of the two aggravating circumstances presented by the Commonwealth, was not to the benefit of Moore. As the PCRA court noted, Moore was an uncooperative client, but not to an extent that relieved trial counsel of the duty to investigate potential mitigating evi-

7. Trial counsels' testimony at the PCRA hearing was unfortunately but understandably equivocal, at best, about whether they had attempted to contact or interview these witnesses, and whether they explained mitigating circumstances to Moore 18 years before. *See* N.T. PCRA Hearing, 1/25/00, at 19, 31, 33–35, 37–38, 40–41, 60–61, 71–72, 90–92, 100–101, 106–107, 115–116, 132–33.

dence, particularly where counsel had no other penalty phase strategy. *Cf. Commonwealth v. Williams,* J–99–2000 (failure to investigate and present psychiatric mitigating evidence was not ineffectiveness where counsel's strategy was to portray defendant as good son and athlete, although strategy was unsuccessful).

Under the circumstances in this case, presenting no mitigating evidence, when such evidence was arguably available, was not a reasonable tactic. Without any mitigating evidence before the jury, Moore's only chance at receiving a life sentence would have been if the jury did not find either of the aggravating circumstances proven. This was not likely, given the factual basis for them shown in the evidence presented by the Commonwealth; therefore, the absence of any mitigating evidence prejudiced Moore. As the PCRA court noted:

[E]vidence could have been presented during the penalty phase which would have established for consideration by the jury, that Moore's life was traumatic, abusive, neglectful, cruel, and harmful to his emotional development. The record established Moore was abused by his alcoholic father, he witnessed his mother receive beatings and when he attempted to protect his mother as a young child, he himself was beaten. He witnessed his father slash his mother's throat and after this event he lived in fear and became withdrawn. Testimony also revealed Moore was neglected and he had various physical ailments that were not cared for. It was evident from the testimony presented that Moore's childhood was one of constant trauma, fear, and terror. Clearly, this [c]ourt finds this type of evidence constitutes mitigating evidence and further finds it should have been presented to the jury and not having done so was prejudicial to Moore. Obviously, this is the type of evidence that demonstrates a reasonable probability that a different result could have occurred at Moore's capital penalty phase trial.

PCRA Court Opinion, 9/22/00, at 9. Accordingly, the grant of a new penalty phase hearing is proper in this case.[8]

Having concluded the PCRA court did not err in ruling Moore is entitled to a new penalty hearing, we need not address the remainder of his penalty phase issues.[9] *See Commonwealth v. Cuevas*, 574 Pa. 409, 832 A.2d 388, 396 n. 3 (2003) (citing *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135, 1139 (1991)) (where capital case is remanded for new penalty hearing, remaining penalty phase issues are rendered moot and need not be addressed).

Accordingly, the PCRA court's order granting Moore a new penalty hearing is affirmed, and the denial of relief on his remaining issues is affirmed.

Order affirmed; case remanded. Jurisdiction relinquished.

Justice SAYLOR files a concurring and dissenting opinion in which Justices NIGRO and BAER join.

Justice SAYLOR, concurring and dissenting.

I join the majority in affirming the PCRA court's decision to award a new sentencing hearing based on its finding of ineffective assistance of counsel both in the development of mitigation evidence in the penalty phase of trial and in the presentation of such issue to this Court on direct appeal.[1]

---

**8.** *Cf. Commonwealth v. Williams*, 577 Pa. 473, 846 A.2d 105 (2004) (no relief due, where PCRA court did not find witnesses credible concerning appellant's claim of trial counsel's ineffectiveness for failing to investigate, develop, and present significant mitigating evidence).

**9.** Issue 4, and the portions of issues 6 and 9 not previously litigated.

**1.** I respectfully differ with the majority's approach to the penalty-phase claims in two respects. First, the majority expresses some reservation concerning whether the evidence of a traumatic, abused childhood would be perceived as a mitigating circumstance. *See* Majority Opinion at 295–98, 860 A.2d at 98–99. I would note, however, that given the requirement of unanimity attached to the imposition of the death penalty, it will require that only a single juror give weight to such life-history mitigation to render it a potentially dispositive factor in a capital sentencing determination. Additionally, the United States Supreme Court has fairly consistently recognized a likelihood that life-history mitigation on the order of that which was withheld from the jurors in this case by virtue of trial counsel's dereliction will carry substantial weight. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 534–35, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003) ("The [life-history]

I differ, however, with the majority's treatment of claims pertaining to the guilt phase of trial. First, although it appears that the majority is correct that a number of the claims should ultimately be deemed previously litigated, I believe that the same evaluative approach should apply in making such determination in relation to the guilt-phase claims as has been employed by the majority and the PCRA court with respect to the primary penalty-phase claim.

Further, while the PCRA court thoroughly addressed Appellant's central penalty-phase claim in its opinion, it failed to provide any reasons supporting the summary dismissal of the guilt-phase claims, including those which were not previously litigated. For example, in his amended post-conviction petition, Moore alleged, *inter alia,* that Ricardo Scott, a coconspirator in the underlying robbery, had since recanted with respect to material portions of his trial testimony as to the

mitigating evidence counsel failed to discover and present in this case is powerful."). Accordingly, while I do not discount the possibility that there may be a strategic reason in some cases not to present such information to a sentencing jury, I do not view the reason that the majority hypothesizes (*i.e.,* that some potential juror might not see this type of evidence as mitigating) as a sufficient one.

Second, I disagree with the majority's characterization of this Court's recent decision in *Commonwealth v. Williams,* 577 Pa. 473, 846 A.2d 105 (2004). *See* Majority Opinion at 300 n. 8, 860 A.2d at 100 n. 8 (summarizing *Williams* along the lines of "no relief due, where PCRA court did not find witnesses credible concerning appellant's claim of trial counsel's ineffectiveness for failing to investigate, develop, and present significant mitigating evidence"). In my view, the *Williams* court's holding is a good deal more complex, since the court was confronted with a PCRA court's failure to expressly consider the potential impact of life-history mitigation that the defendant's trial counsel had failed to develop at the penalty phase of trial pursuant to the appropriate provision of the death-penalty statute. *See Williams,* 577 Pa. at 485–86, 846 A.2d at 113 ("It is unclear whether the [PCRA] court specifically considered the (e)(8) mitigator."). In light of this deficiency, the *Williams* majority undertook to perform the necessary analysis on its own. *See id.* at 486–89, 846 A.2d at 114–15. Moreover, this Court separately recognized (despite contrary suggestions by the PCRA court) that the life-history evidence was, in fact, substantially mitigating. *See id.* at 485–86, 846 A.2d at 113. The relevant facet of the *Williams* decision, therefore, does not represent a straightforward application of general principles of deference applied by appellate courts to fact-finding determinations made by courts of original jurisdiction, as the present majority suggests.

actual killing. In this regard, Moore attached to the petition an affidavit from Scott to the effect that:

> I did not want to testify against [Appellant]. I was being forced by the district attorneys of Luzerne County. I was forced to lie against [Appellant]. I was forced to testify that [Appellant] shot [the victim]. They told me if I did not testify against [Appellant], they would give me the death penalty. I was afraid of them and felt that I had no choice. . . .
>
> I know for a fact that [Appellant] did not shoot [the victim]. I told [the district attorney] that [Appellant] didn't shoot [the victim]. . . .

The PCRA court, however, failed to analyze this recantation or its possible effect on the reliability of the first-degree murder guilty verdict.[2] In such circumstances, I believe that the appropriate course is to remand to the PCRA court for the preparation of an adequate opinion. Indeed, this Court has specifically disapproved the practice of summary dismissal of such claims without sufficient explanation. *See Commonwealth v. Williams*, 566 Pa. 553, 568, 782 A.2d 517, 526 (2001) (explaining that "affirmance of the PCRA court's disposition . . . is not appropriate in view of the absence of an adequate opinion"); *see also Commonwealth v. Williams*, 557 Pa. 207, 224–25, 732 A.2d 1167, 1176 (1999). Additionally, given the central role of credibility in the disposition of claims involving witness recantation, the *Williams* court directed the PCRA court to conduct an evidentiary hearing and render findings of fact and conclusions of law concerning the credibility of the witness and the impact, if any, upon the truth determining process. *See id.* at 233, 732 A.2d at 1181; *accord Commonwealth v. D'Amato*, 579 Pa. 490, 521–24, 856 A.2d 806, 825–26

2. The majority approves the PCRA court's summary dismissal of this claim, stating that the evidence does not tend to prove Moore's innocence of first-degree murder, but "only attempts to smear the Commonwealth's case." Majority Opinion at 290, 860 A.2d at 95. In the context of the underlying facts of this case, however, any doubt that Moore personally shot the victim could undermine the position that he harbored a specific intent to kill.

(2004). Thus, at least with respect to this claim, I would craft a similar order here in connection with a remand.

Justices NIGRO and BAER join this concurring and dissenting opinion.