932 A.2d 1261

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Alfonso F. CARTER, Appellee.**

Supreme Court of Pennsylvania.

Argued May 8, 2006.

Decided Oct. 17, 2007.

Edward Michael Marsico, Jr., Harrisburg, James Patrick Barker, Williamsport, for the Com. of PA, appellant.

Arnold H. Gordon, Ronald Eisenberg, Hugh J. Burns, Jr., Philadelphia, Jason E. Fetterman, for Philadelphia Dist. Attys. Office, appellant amicus curiae.

Jeffrey Bryant Engle, Harrisburg, for Alfonso F. Carter, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN AND BAER, JJ.

## OPINION

Justice EAKIN.

We granted allowance of appeal to determine whether a state police laboratory report falls under the business record exception to the hearsay rule, *see* Pa.R.E. 803(6), so as to be admissible when the person who made the report is unavailable for cross-examination at trial.

Appellee was charged with possession of a controlled substance with intent to deliver (PWID). He filed a motion to suppress the evidence, which the trial court denied. At appellee's bench trial, the court admitted into evidence, over appellee's objection, the police crime laboratory report which indicated the presence of 11.6 grams of cocaine in the material seized from appellee. The report was introduced through the lab manager, who testified regarding its contents because the forensic scientist who conducted the testing and prepared the report was not available.

The trial court convicted appellee of PWID and sentenced him. The Superior Court affirmed on direct appeal, *Commonwealth v. Carter*, 748 A.2d 767 (Pa.Super.1999), and appellee did not seek review by this Court. Appellee filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, claiming the trial court erred in admitting the lab report under Rule 803(6), and appellate counsel was ineffective for failing to raise this issue on direct appeal.

The PCRA court denied the petition without a hearing, holding the lab report met the requirements of the business record exception in Rule 803(6), and thus did not create a confrontation problem. PCRA Court Opinion, 4/10/02, at 6. Therefore, counsel was not ineffective for failing to raise this meritless claim. *Id.*, at 10.

A panel of the Superior Court reversed, *Commonwealth v. Carter*, 833 A.2d 778 (Pa.Super.2003); however, the opinion

was withdrawn following the grant of a reargument petition filed by the Commonwealth. *Commonwealth v. Carter*, 2003 Pa.Super. Lexis 4471 (Pa.Super.Dec. 5, 2003). Following reargument *en banc*, the Superior Court reversed the PCRA court's order and remanded for a new trial, holding the lab report did not fall under the business record exception because it was prepared in anticipation of litigation. *Commonwealth v. Carter*, 861 A.2d 957, 962–63 (Pa.Super.2004). The court further concluded the admission of the report was not harmless error, as appellee's confrontation rights were violated by not being able to cross-examine the forensic scientist who performed the test and prepared the report. *Id.*, at 969.

The court stated its conclusion was based on the following: the lab manager did not have a "close connection" to the actual testing; his testimony was offered in his capacity as custodian of the lab's business records, when the Commonwealth erroneously assumed the business record exception applied; his testimony, even if offered as an expert, was not his own opinion but merely a repetition of the information in the lab report; and the report and this testimony were the only substantive evidence establishing an essential element of the crime, *i.e.*, the presence of a controlled substance. *Id.*[1]

In focusing on the fact the report was prepared in anticipation of litigation, the court stated although there was nothing indicating the forensic scientists in this case conducted themselves unprofessionally, there was the possibility of inherent bias by the lab because it is part of the state police. *Id.*, at 969–70, 970 n. 6.

Judge Joyce dissented, concluding the report was properly admitted under the business record exception. Analogizing Superior Court precedent concerning the admission of blood

1. In light of its reversal of the PCRA court's order, the Superior Court did not address appellee's other issues: appellate counsel's ineffectiveness for failing to appeal the trial court's denial of his motion for continuance and for failing to challenge the admission of certain testimonial evidence regarding his prior drug convictions. *See Carter*, 861 A.2d at 960 n. 4. The PCRA court found these issues were meritless; therefore, counsel was not ineffective for failing to raise them. *See* PCRA Court Opinion, 4/10/02, at 4–5, 9–10.

alcohol content (BAC) test results without the testimony of the lab technician who performed the test, the dissent would have found the lab report did not contain an "opinion or diagnosis" of its author, but rather contained objective facts. *Carter*, 861 A.2d at 973 (Joyce, J., dissenting) (citing *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979); *Commonwealth v. Karch*, 349 Pa.Super. 227, 502 A.2d 1359 (1986); *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 558 A.2d 865 (1989)). The dissent further noted the controlled substance test was "an accepted chemical analysis that produces highly reliable results rising beyond mere opinion to the level of scientific fact," *id.*, thus possessing an inherent element of trustworthiness. *Id.* Accordingly, the dissent would have affirmed the PCRA court's dismissal of appellee's petition.

██ Upon petition by the Commonwealth, we granted review. *Commonwealth v. Carter*, 583 Pa. 678, 877 A.2d 459 (2005). "In reviewing an order granting or denying post conviction relief, we examine whether the PCRA court's determination is supported by the evidence and whether it is free of legal error." *Commonwealth v. Moore*, 580 Pa. 279, 860 A.2d 88, 93 (2004) (citation omitted). Thus, we must determine whether the Superior Court was correct in concluding the PCRA court erred in granting relief. Furthermore, as the PCRA court's determination was based upon its review of the trial court's evidentiary ruling, we keep in mind that "[t]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Treiber*, 582 Pa. 646, 874 A.2d 26, 31 (2005) (citation omitted).

## I. Admissibility Under Pa.R.E. 803(6)

█ Pennsylvania Rule of Evidence 802 provides: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.*, 801(c). A "statement," as pertinent to this

instance, is "an oral or written assertion[,]" *id.*, 801(a), and "[a] 'declarant' is a person who makes a statement." *Id.*, 801(b).

The Rules of Evidence provide certain statements are not excluded by the hearsay rule, even when the declarant is not present. Rule 803(6), known as the "business record exception," provides:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . unless the sources of information or other circumstances indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

*Id.*, 803(6). The Rule "places the burden on an opposing party to show that the sources of information or other circumstances indicate that a business record is untrustworthy, and thus does not qualify for exception to the hearsay rule." *Id.*, Comment.

Here, the lab manager verified the report was made by the forensic chemist at or near the time the chemist conducted the analysis of the substance seized from appellee. *See* N.T., 1/11/99–1/12/99, at 70–71. It is the regular practice of the crime lab to generate such reports. *See id.*, at 71. Thus, the report is the type of record encompassed by the Rule.

 However, even if a record falls within the business record exception, its admission may still violate the Confrontation Clause of the Sixth Amendment of United States Constitution.[2] *See California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Confrontation Clause not

2. The clause, made applicable to the States through the 14th Amendment, *see Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 13

congruent with hearsay rule; confrontation rights may be violated even though evidence is admitted under recognized hearsay exception). "The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay." *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). First, the prosecution is required to demonstrate the unavailability of the declarant whose statement it wishes to introduce against the defendant. *Id.* Once the witness is shown to be unavailable, the statement must be shown to be inherently trustworthy. *Id.*, at 65–66, 100 S.Ct. 2531. However, a demonstration of unavailability is unnecessary where the utility of confrontation at trial is remote. *See id.*, at 65 n. 7, 100 S.Ct. 2531 (citing *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (plurality)). Additionally, firmly rooted exceptions to the hearsay rule do not violate the Confrontation Clause. *See Bourjaily v. United States*, 483 U.S. 171, 182–83, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Roberts*, at 66, 100 S.Ct. 2531 [3]; *see also Commonwealth v. Romero*, 555 Pa. 4, 722 A.2d 1014, 1018 (1999) (evidence admitted under well-recognized exception to hearsay rule and supported by sufficient indicia of reliability does not raise confrontation problems).

Appellee relies, as did the Superior Court, on *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974), which

L.Ed.2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

3. Recently, the United States Supreme Court held the Sixth Amendment requires a prior opportunity for cross-examination of the declarant, regardless of whether the statement falls under a "firmly rooted" hearsay exception or bears "particularized guarantees of trustworthiness" under *Roberts*. *See Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."). However, this Court has held *Crawford* does not apply to collateral review, *see Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 576 n. 15 (2005), and the United States Supreme Court recently held *Crawford* does not apply retroactively. *See Whorton v. Bockting*, —— U.S. ——, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007). Thus, *Crawford* is inapplicable to this case, and *Roberts* governs our Confrontation Clause analysis.

held reading a medical examiner's report into evidence at a murder trial, without calling him as a witness, was reversible error. Appellee contends *McCloud* precludes a report which establishes an element of the crime to be read into evidence without the opportunity to cross-examine the person who made the report; in *McCloud*, the element at issue was the cause of death. Here, the issue was the identity and weight of the substance,[4] which was contained in the lab report; therefore, appellee argues *McCloud* prohibits admission of the report without the testimony of its maker.

The Commonwealth contends *McCloud* is distinguishable; we agree. In that case, the report contained an expert opinion regarding the cause of death; it was not merely reporting a factual condition, such as the presence of a substance in the body or the characteristics of the body. Here, the report indicated the substance seized from appellee was 11.6 grams of cocaine; this is not an opinion, but rather the recording of a test result. Prior to testing, the forensic scientist who conducted the test may have had an opinion regarding the substance's identity based on its physical appearance; after testing, however, his opinion was irrelevant, as the test result was objective and stood on its own, despite any subjective impressions concerning the substance's identity or weight. The scientist simply recorded the test result in the report. Thus, it was not an expert opinion which would require the expert who rendered it to testify. *See Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515, 521 (1992) (expert may not act as mere conduit or transmitter of content of extrajudicial source).

Several Superior Court cases addressing the admissibility of BAC test results without the testimony of the technician who administered the test are analogous. In *Seville*, the court held a BAC test is basic, routine, and highly reliable, thus rising beyond mere opinion or conclusion to the level of a

4. Appellee admitted at trial that he had bought drugs and had eight "rocks" of crack cocaine in his pocket at the time of his arrest. *See* N.T., 1/11/99–1/12/99, at 99–100, 107. However, he argued the cocaine admitted into evidence at trial was not seized from him. *Id.*, at 115, 118.

medical fact. *Id.*, at 1265–66; *see also Kravontka; Karch.* The court concluded such tests were inherently reliable, as

[n]o such doubts as to reliability and accuracy are entertained when a record is offered merely to prove facts, such as ... existence of some readily ascertained substance or chemical within the body.... It is this element of trustworthiness, serving in place of the safeguards ordinarily afforded by confrontation and cross-examination, which justifies admission of the writing or record without the necessity of calling all the persons who may have had a hand in preparing it.

\* \* \*

The standardized, precise calculations used in arriving at a final result leave little room for error.

*Seville,* at 1264–65. Furthermore, the court subsequently observed:

[T]he utility of confrontation is extremely remote due to the inherent reliability of blood tests and their recording.

\* \* \*

Because of the overwhelming "indicia of reliability" inherent in blood-alcohol tests and the records of those test [sic], the cross-examination of the technician who performed the test would be of insignificant utility to a defendant. Moreover, we see little need to parade before a jury every technician who was associated with a defendant's blood-alcohol test simply to explain a procedure which, on a daily basis, is proven most reliable.

*Kravontka,* at 869–70. Thus, the court held BAC test results did not constitute expert opinion which would require the testimony of the technician who conducted the test, nor did the admission of such tests absent the technician's testimony violate a defendant's confrontation rights. Additionally, the court noted production of the declarant in such instances would be "unduly inconvenient and of small utility to a defendant." *Id.*, at 868 (citing *Dutton,* at 96–97, 91 S.Ct. 210 (Harlan, J., concurring)).

Here, as with BAC tests,[5] the drug tests are basic, routine, and highly reliable. The forensic chemists use standardized, precise calculations in determining the presence of a controlled substance and in ascertaining its weight, arriving at a final result that leaves little room for error. Furthermore, given the fact the chemist in this case performed the test nearly one year prior to trial, "[h]is testimony inevitably would have been based on the lab report now at issue." *Carter*, at 974 (Joyce, J., dissenting). Thus, cross-examining the chemist about the specifics of one test out of perhaps hundreds of identical tests would have been of little utility; as the Superior Court dissent noted, any testimony regarding the likelihood of error in the test procedure would have concerned general practices and probabilities in the lab, about which the lab's manager was qualified to testify. *See id.*

Other jurisdictions which have addressed the admissibility of reports regarding the identity of controlled substances, absent the testimony of the forensic scientist who prepared the report, have concluded such reports fall under a firmly rooted exception to the hearsay rule, and thus do not violate the Confrontation Clause. *See, e.g., United States v. Baker*, 855 F.2d 1353 (8th Cir.1988); *Howard v. United States*, 473 A.2d 835 (D.C.App.1984); *Kay v. United States*, 255 F.2d 476 (4th Cir.1958); *State v. Cosgrove*, 181 Conn. 562, 436 A.2d 33 (1980); *State v. Malsbury*, 186 N.J.Super. 91, 451 A.2d 421 (Law Div.1982); *State v. Kreck*, 86 Wash.2d 112, 542 P.2d 782 (1975).[6]

**5.** In addition to the line of cases involving BAC test results, sexual assault cases involving medical reports concerning the victim have long followed this logical distinction. *See Commonwealth v. Xiong*, 428 Pa.Super. 136, 630 A.2d 446 (1993) (notation in physician's report that victim had "no hymen" was factual assertion rather than diagnosis or opinion for purposes of Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108); *Commonwealth v. Campbell*, 244 Pa.Super. 505, 368 A.2d 1299 (1976) (hospital record reporting finding of semen in victim's vagina must be treated as fact and not medical conclusion, and thus admissible in rape prosecution).

**6.** Many other jurisdictions have upheld the admissibility of lab reports or similar records in the face of a Sixth Amendment challenge. *See Howard*, at 839–40 (collecting cases); *Cosgrove*, at 40 n. 10 (collecting cases); *Kravontka*, at 870 n. 5 (collecting cases); *Kreck*, at 787–88 & n.

Appellee and the Superior Court majority articulated their concern regarding the possibility of inherent bias by the police lab, as the lab is part of the same branch of government as the prosecutor's office, both being vested with the task of law enforcement. However, as the *Howard* court noted:

> [T]he chemists who conduct such analyses do so routinely and generally do not have an interest in the outcome of trials. In fact, as employees and scientists, they are under a duty to make accurate reports. It is difficult to perceive any motive or opportunity for the chemists to falsify.

*Howard*, at 839. Additionally, the court in *Cosgrove* emphasized the unique role of a state toxicologist:

> The chemist is employed in a completely different and separate agency of state government and owes no allegiance per se to the state's attorney who functions in a separate constitutional branch of state government.... [T]he tests performed by the chemist could just as easily be seen as a check on the prosecutorial effort so as to ensure not only that proper convictions are obtained but also that further prosecutorial time is not expended if the substance examined is not contraband. It would be incumbent upon the chemist to take particular effort to ensure the reliability of tests not only because of her training as a scientist and to

3 (collecting cases). We recognize other jurisdictions have held such reports are not admissible under the business record exception and violate the defendant's confrontation rights. *See, e.g., United States v. Oates*, 560 F.2d 45 (2d Cir.1977); *Barnes v. State*, 704 So.2d 487 (Ala.Crim.App.1997); *State v. Rivera*, 515 A.2d 182 (Del.Super.1986); *People v. McClanahan*, 191 Ill.2d 127, 246 Ill.Dec. 97, 729 N.E.2d 470 (2000); *State v. Williams*, 253 Wis.2d 99, 644 N.W.2d 919 (2002). One concern raised in these cases was that records prepared in anticipation of litigation traditionally do not fall under the business record exception. *See Williams*, at 929–30. However, because of the factual nature of these reports and the unique role of the forensic chemist, discussed *infra*, we conclude the fact such reports were prepared for use in prosecution does not preclude them from admission under the business record exception. These reports are not documents prepared for the purpose of avoiding hearsay objections.

maintain her position ..., but also so that the prosecution could proceed or not with assurance.

*Cosgrove*, at 41.

We find this reasoning persuasive; a state police lab chemist has no interest in the outcome of a trial and is employed specifically to determine whether a controlled substance is present. If not present, his employer is served, as no state resources need be expended in prosecution of an offense. The chemist is a professional, a scientist who is employed to be neutral and objective; thus, the potential for bias is very small. Furthermore, in the instant case, appellee bore the burden under Rule 803(6) of showing the record was untrustworthy; he made no such claim. The lab manager was available for cross-examination regarding the testing procedure itself and other circumstances behind the creation of the report. *See* N.T., 1/11/99–1/12/99, at 79–80; *see also Kay*, at 480 (admission of BAC test result does not foreclose inquiry into regularity of procedure, purity of sample, or accuracy of chemical analysis; such questions go to weight of evidence, not admissibility); *State v. Kennedy*, 7 S.W.3d 58 (Tenn.Crim. App.1999) (admission of DNA report through testimony of laboratory supervisor instead of technician who performed test did not violate defendant's confrontation rights where defendant was able to cross-examine supervisor regarding samples, procedures, safeguards, and results).

Accordingly, we hold the trial court did not abuse its discretion in admitting the lab report pursuant to the business record exception, and the PCRA court did not err in concluding there was no violation of appellee's confrontation rights.

## II. Admissibility Under 42 Pa.C.S. § 6104

■ Even if the lab report does not fall under the business record exception, it would still be admissible as an official record under § 6104 of the Judicial Code, which provides:

(a) General rule.—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as

evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

(b) Existence of facts.—*A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.*

42 Pa.C.S. § 6104 (emphasis added).

Thus, a government lab report containing a chemical analysis of a seized substance would be admissible to show the substance was a drug, if the substance's nature is a fact recorded pursuant to an official duty, absent some indication of untrustworthiness.[7] Police lab reports are not documents prepared for purpose of avoiding hearsay objections, and such reports are not prepared "in anticipation of litigation" in the traditional sense; the information they contain is crucial in determining whether to prosecute at all. Absent any indication of wrongdoing on the part of law enforcement, the label of untrustworthiness cannot be attached to the report simply because of its source. Accordingly, we hold such record is admissible and does not violate a defendant's confrontation right, regardless of whether it falls within Rule 803(6)'s hearsay exception.[8]

Thus, the Superior Court erred in reversing the denial of PCRA relief, and we reverse the Superior Court's order and

7. At the time the Constitution was adopted, common law recognized the admissibility of an official record as an exception to the Confrontation Clause. *See Commonwealth v. Slavski*, 245 Mass. 405, 140 N.E. 465, 468 (1923) (describing official records exception as "ancient principle of the common law" (citing 2 Wigmore on Evidence §§ 1395–1398 (1923))). Thus, this exception satisfies *Roberts'* "firmly rooted" requirement.

8. Our analysis concerning admissibility under 42 Pa.C.S. § 6104 is an alternative holding supporting the result reached. *See Commonwealth v. Swing*, 409 Pa. 241, 186 A.2d 24, 26 (1962) (where decision rests on two or more equally valid grounds, none may be relegated to status of *obiter dictum*).

remand to the Superior Court for consideration of appellee's open PCRA issues.

Order reversed; case remanded. Jurisdiction relinquished.

Justice BALDWIN did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Justices CASTILLE and BAER join the opinion.

Justice SAYLOR files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion.

Justice SAYLOR, concurring.

I join Part II of the majority opinion, and the result thus obtained. However, I am unable to join Part I because, in my view, the laboratory report at issue was prepared by the police in anticipation of litigation, thus taking it outside of the traditional business records exception to the hearsay rule. *See generally Echo Acceptance Corp. v. Household Retail Services*, 267 F.3d 1068, 1091 (10th Cir.2001) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business." (citation omitted)); *Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657, 668 (2007) ("[T]he trial court erred in applying the business records exception to a laboratory report that was prepared in anticipation of litigation.").[1]

1. In dissent, Mr. Chief Justice Cappy expresses that the lab report should not be deemed to be covered by Section 6104, 42 Pa.C.S. § 6104, because, as a general proposition, records prepared in anticipation of litigation fall outside the business records exception to the hearsay rule due to their lack of trustworthiness. *See* Dissenting Opinion at 1271 (citing *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)). However, the Supreme Court's *Palmer* decision, on which the dissent principally relies, was one of statutory interpretation. While it did note that the "probability of trustworthiness" of ordinary business records "because they were routine reflections of the day to day operations of a business" was the basis of the rule adopted by Congress, *id.* at 113–14, 63 S.Ct. at 480, it did not suggest that every form of document prepared in anticipation of litigation is attended by

Chief Justice CAPPY, dissenting.

I respectfully dissent from the majority opinion because I do not believe that a state police lab report falls within the business records exception to the hearsay rule.

As noted by the majority opinion, Pennsylvania Rule of Evidence 803(6) provides an exception to the hearsay rule that permits admission of certain types of regularly kept business records. The exception is "justified by the high degree of accuracy imputed to business records because of the regularity with which they are kept and the high degree of reliance placed upon them by the entities that keep such records." LEONARD PACKEL AND ANNE BOWEN POULIN, PENNSYLVANIA EVIDENCE, § 803(6)–1 at 757–58 (2d ed. 1999). As one commentator has noted:

The business records exception grew out of considerations of necessity and trustworthiness—the necessity for alternatives in permitting large and small business to prove debts by their records of account, and the unusual degree of trustworthiness and reliability of such records owing to the fact that they were kept regularly, systematically, routinely, and contemporaneously. The element of unusual reliability is supplied by habit or precision, by actual experience of business in relying upon these records or by a duty to make an accurate record as a part of a continuing job or occupation. The essence of the business records exception to the hearsay rule is that records systematically made for the conduct of a business as a business are inherently highly trustworthy. These records are routine reflections of day-to-day operations, and because of their entrant's obligations

circumstances indicating an affirmative *lack* of reliability, as required for exclusion under Section 6104(b). This is not to say that the courts should necessarily attach special trustworthiness to documents created by a police crime lab. It is worth noting, however, that a police forensic lab is not a "business" in the traditional sense, but rather, exists to promote the interests of justice. Thus, like the majority, I am equally unwilling to attach the label of untrustworthiness to crime lab reports merely because of their source. In short, absent some evidentiary support I see no reason to presume that a report issuing from such a lab in the regular course of its activities is likely to be unreliable for purposes of the Section 6104(b) exclusion.

to have them truthful and accurate for the purpose of the conduct of the enterprise, their reliability is without question.

ROBERT BERKLEY HARPER, HANDBOOK OF PENNSYLVANIA EVIDENCE, § 803[E] at 434 (2001).

The United States Supreme Court, in *Palmer v. Hoffman,* 318 U.S. 109, 113–14, 63 S.Ct. 477, 87 L.Ed. 645 (1943), employed a similar understanding of what constitutes a business record as a "record made for the systemic conduct of the business as a business." *Palmer,* 318 U.S. at 113, 63 S.Ct. 477. As the Court further explained, such records would be those "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." *Id.*

Using this understanding of business records as contemplated by Rule 803(6), my query would be whether a state police lab report was a record made for the systematic conduct of the business as a business, or, using the words of Robert Harper, whether the records are routine reflections of day-to-day operations of the business. Viewed in this light, a state police lab report is not a record that reflects the day-to-day operations of the business of the state police lab. Instead, it is a product of the business itself and unlike a record that has been kept to reflect the day-to-day operations of the business. *See, e.g. Commonwealth v. Graver,* 461 Pa. 131, 334 A.2d 667 (1975) (holding that a police log reflecting course of business from the day's police reports was admissible). It certainly does not reflect routine events or occurrences, transactions with others, or provide a mechanism for internal controls. *Palmer, supra.* Accordingly, I would not find the lab report at issue to be a "business record" within the definition of Rule 803(6).

Moreover, even if I were persuaded that a state police lab report was the type of record contemplated by Rule 803(6), I would find that it does not fall within the exception, since it is a record prepared in anticipation of litigation. Business rec-

ords prepared for the purposes of pending litigation can never be "in the regular course of business" for purposes of Rule 803(6). *Pompa v. Hojnacki,* 445 Pa. 42, 281 A.2d 886 (1971); *see State of Wisconsin v. Williams,* 253 Wis.2d 99, 644 N.W.2d 919 (2002) (holding that state crime lab report was not admissible under the business records exception to the hearsay rule). Turning again to the United States Supreme Court's decision in *Palmer,* the Court explained that the basis for the exception was "to facilitate the admission of records which experience has shown to be quite trustworthy." 318 U.S. at 113, 63 S.Ct. 477. Documents prepared in anticipation of litigation do not share this same trustworthiness. *Id.* at 114, 63 S.Ct. 477. Therefore, as the state police lab report in question was prepared for the sole purpose of prosecution, I cannot conclude it falls within the ambit of Rule 803(6).

I also cannot join the majority's alternative analysis, since I disagree that the report falls within Section 6104 of the Judicial Code. That section provides that "official records" shall be admissible ... "unless the sources of information or other circumstances indicate lack of trustworthiness." 42 Pa.C.S. § 6104. Records prepared in anticipation of litigation are excluded from the business records exception because of their lack of trustworthiness. *Palmer, supra.* Accordingly, I do not see how the result can be any different under § 6104, which similarly requires that the documents reach a certain level of trustworthiness in order to be admissible.

For these reasons, I respectfully dissent.