NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1085
_____

TYRONE MOORE,
Appellant

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cv-00828)
District Judge:  Honorable Christopher C. Conner
_____

Argued October 25, 2011
Before:  FISHER, VANASKIE and ROTH, *Circuit Judges*.

(Filed: January 9, 2012)

Mary Gibbons (Argued)
600 Mule Road, #16
Toms River, NJ  08757

Matthew C. Lawry (Argued)
Billy H. Nolas
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA  19106
        *Counsel for Appellant*

Frank P. Barletta (Argued)
Luzerne County Office of District Attorney
200 North River Street
Wilkes-Barre, PA 18711

Robert M. Wolff
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Tyler Moore ("Moore") appeals the District Court's denial of his petition for habeas corpus arising out of a conviction and life sentence for armed robbery and first-degree murder. He raises five claims on appeal based on: (a) his physical appearance at trial; (b) trial publicity; (c) "irreconcilable differences" with appointed counsel; (d) alleged *Brady* violations; and (e) ineffective assistance of counsel. For the reasons stated below, we will affirm the District Court's dismissal of Moore's first three claims, but reverse and remand for evidentiary hearings on Moore's *Brady* and ineffective assistance of counsel claims.

I.

A. *Factual Background*

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On the evening of October 1, 1982, an armed robbery at the veterinary office of Dr. Joseph Lopotofsky at Forty-Fort Animal Hospital in Luzerne County, Pennsylvania, ("the Forty-Fort robbery") resulted in the death of Mr. Nicholas Romanchick. Two men had entered the clinic where the doctor was examining Mr. and Ms. Romanchick's cat. As the robbers were tying up the doctor, the doctor's assistant, and the Romanchicks, one of the robbers shot Mr. Romanchick in the back. The robbers fled, taking Ms. Romanchick's purse with them. Mr. Romanchick died thirteen days later from the gunshot wound.

A day after the robbery at the veterinarian's office, an armed robbery took place at a bank in Chinchilla, Pennsylvania. Four robbers were identified from bank surveillance photographs: Kenneth McGoy, Anthony Brad Jones, Ricardo Scott, and Tyrone Moore. Law enforcement suspected that the crimes were related, and focused their investigation on obtaining eyewitness identifications of the bank robbers at the Forty-Fort robbery.

Ms. Romanchick identified Moore in a photo array. None of the other victims of the Forty-Fort robbery could identify the shooter. In an FBI interview, McGoy's girlfriend, Juanita Lancaster, said that she had been with McGoy and her sister, Sarah, at

3

McGoy's home on the night of October 1. She said that three individuals arrived at McGoy's home, discarded clothing and items from Ms. Romanchick's purse, and left the next morning. She identified two of the visitors as Anthony Jones and "Rick." Based on photos from the bank robbery, she identified Jones, McGoy, and Scott, but not Moore, as the men at McGoy's house. Ricardo Scott confessed to the FBI that he, Moore, and Jones had driven to the Forty-Fort animal hospital to rob Dr. Lopotofsky, and that Moore had shot Mr. Romanchick. He admitted to being in a "reefer haze." The interview transcript appears to say that Mr. Romanchick "rushed" or "wrestled" Moore before being shot.

Moore was arrested for Mr. Romanchick's murder on January 7, 1983. Before trial, defense counsel moved for a change of venue based on publicity regarding Moore's involvement in the bank robbery and the homicide. The trial court denied the motion. Trial began in May 1983, but soon after the jury began deliberations, the court declared a mistrial.

Moore's second trial began on September 12, 1983. Two weeks before trial, Moore filed a motion seeking to discharge his appointed defense counsel for "irreconcilable differences," and seeking new trial counsel. Defense counsel filed a companion motion to withdraw. Based on counsel's diligence and effectiveness to that point, the court determined that Moore was trying to buy time and denied the motions without a hearing. Soon after trial began, Moore appeared in court with a bandage on his head to cover a wound received in a prison altercation. He was clothed in prison

4

garments. Based on publicity regarding Moore's involvement in the altercation and Moore's appearance, defense counsel moved for a mistrial. After denying the motion, the trial judge instructed the jury to ignore Moore's appearance and the surrounding publicity.

At trial, the Commonwealth of Pennsylvania identified Moore as the shooter based on testimony from Scott, Juanita Lancaster, and Ms. Romanchick, but did not present any physical or forensic evidence. Scott testified pursuant to a plea agreement that he and Moore had committed the robbery, Jones drove, and Moore had shot Mr. Romanchick. Lancaster testified consistent with her statement to the FBI, but added that Moore had been introduced to her that night as "Kareem," and identified him at trial. At trial, Ms. Romanchick identified photos of both Moore and another individual as the shooter, and her description of Moore bore discrepancies from his actual appearance.

Moore presented an alibi defense that he was in Philadelphia where he was living on October 1. Willie Rush, a potential alibi witness, did not testify on Moore's behalf; a defense investigator stated that he had "begged off" and the government stated that Rush had indicated he had no knowledge of Moore's whereabouts. Although Jones offered to testify, Moore's lawyer decided not to call him. The jury returned a verdict of guilty on September 19, 1983. Moore was sentenced to death.

After trial, Moore obtained affidavits from witnesses who did not testify. Anthony Brad Jones stated that Scott had never mentioned that Moore was involved in the Forty-Fort robbery and homicide, and that a man named Emmet Burgis – not Moore – was

involved in the homicide and the bank robbery the next day. Sarah Lancaster stated that neither she nor Juanita knew any of the individuals who came to the house on the night of October 1. She also said that nobody named "Kareem" was introduced to them, and that Juanita had only testified to this, and Moore's identity, after being threatened with arrest. Willie Rush, a manager of a Philadelphia boxing gym where Moore trained, stated that he had told investigators that Moore had been at the gym on October 1 and 2, as recorded in the gym's log book. He said that investigators threatened to arrest him for perjury if he came forward with his testimony, and that he did not see the log book again after the investigators looked at it. Ricardo Scott stated that he had been coerced by the prosecution to testify against Moore and recanted his trial testimony.

## B. *Procedural History*

### 1.

Moore filed a series of post-trial motions with the Luzerne County Court of Common Pleas. Among them, he argued that trial counsel was ineffective for, *inter alia*, (a) failing to impeach Scott, (b) failing to move for change of venue prior to the second trial, and (c) failing to adequately investigate potential alibi witnesses; that the trial court had erred in instructing the jury to ignore his inherently prejudicial appearance; and that the Commonwealth had violated *Brady v. Maryland*, 373 U.S. 83 (1963). Finally, he submitted a proffer of "newly-discovered" evidence consisting of the Jones affidavit, and a proffer that Willie Rush would have testified at his trial. The post-trial motions were denied *in toto* on October 14, 1987.

6

## 2.

Moore appealed his conviction and sentence to the Supreme Court of Pennsylvania. *Commonwealth v. Moore*, 633 A.2d 1119, 1122 (Pa. 1993). On his direct appeal, he challenged the trial court's instruction to disregard his physical appearance after the prison altercation and the denial of his request for new counsel, *id.* at 1124-27; he argued that counsel was ineffective for failing to impeach Scott at trial and failing to secure Rush as an alibi witness, *id.* at 1131-35; and he asked for a new trial based on after-discovered evidence contained in the Jones affidavit and evidence proffered by Rush, *id.* at 1135-36. The court rejected his arguments. *Id.* at 1137.

## 3.

In January 1997, Moore filed for relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). The petition addressed all arguments that Moore had presented on direct appeal, and added an allegation that he was shackled and cuffed in front of the jury as part of his physical appearance claim. The PCRA court concluded that trial counsel had been ineffective in failing to introduce any mitigation evidence in the penalty phase, and vacated the death sentence. However, the PCRA court denied – without holding a hearing or otherwise addressing – Moore's remaining claims.

## 4.

The Pennsylvania Supreme Court, in October 2004, upheld the ruling of the PCRA court. *Commonwealth v. Moore*, 860 A.2d 88, 100-01 (Pa. 2004). It did not entertain Moore's physical appearance, conflict of interest, or change of venue claims because it

7

deemed them previously litigated on direct appeal. *Id.* at 92-93. It rejected his *Brady* claim on the grounds that "none of th[e] evidence as alleged tend[ed] to prove Moore's innocence of the crime," and that "Moore only attempt[ed] to smear the Commonwealth's case by these averments of misconduct." *Id.* at 95. It rejected his claim of ineffective assistance of counsel based on counsel's failure to impeach witnesses and investigate alleged intimidation of witnesses as "retooled versions of Moore's unsuccessful *Brady* claims," and concluded that Moore's remaining claims, which rested on failure to impeach Lancaster and Scott, did not prejudice the trial outcome. *Id.* at 96. The dissent argued that the case should have been remanded for an evidentiary hearing on the proffered *Brady* evidence. *Id.* at 101-02. On remand, Moore was re-sentenced to life imprisonment.

5.

A petition for relief pursuant to 28 U.S.C. § 2254 was filed in the U.S. District Court for the Middle District of Pennsylvania in April 2005. On December 11, 2007, the District Court denied relief on all claims. Moore timely appeals.

II.

The District Court had jurisdiction over Moore's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2254. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

At the time argument was heard, Moore had only obtained a Certificate of Appealability ("COA") on three claims: his physical appearance, prejudicial publicity,

8

and counsel's "conflict of interest." His motions for a COA on both *Brady* and ineffective assistance of counsel had not yet been addressed. On appeal, a "state prisoner seeking federal habeas corpus relief must obtain a COA as a 'jurisdictional pre-requisite.'" *Pabon v. Mahanoy*, 654 F.3d 385, 392 (3d Cir. 2011) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)); *see* 28 U.S.C. § 2253(c)(3); Third Circuit L.A.R. 22.1(b). Based on the evidence proffered by Moore, which we discuss below and on which justices of the Pennsylvania Supreme Court differed, we are satisfied that jurists of reason would find it debatable whether *Brady* violations had occurred and whether counsel rendered ineffective assistance. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, we will grant a COA for Moore's remaining claims.

Insofar as Moore's habeas claims were adjudicated on the merits, we review the state courts' decisions under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254. Habeas relief under § 2254(d) shall not be granted unless the state court's decision was: (1) "contrary to" or "involved an unreasonable application" of federal law clearly established by the holdings of the Supreme Court, § 2254(d)(1), or (2) "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). We limit our review to the record that was before the state court when it adjudicated the petitioner's claims on the merits, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1400 (2011), and analyze the state court's decision in light of the clearly established law at that time. *Greene v. Fisher*, No. 10-637, 565 U.S. __, 2011 WL 5335411, at *3 (2011).

9

"Where . . . a district court dismisses a habeas petition based solely on a review of the state court record without holding its own evidentiary hearing, our standard of review of the district court's determination is plenary." *Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir. 2002) (citation omitted). Insofar as Moore challenges the District Court's decision not to hold an evidentiary hearing, we review for abuse of discretion. *Morris v. Beard*, 633 F.3d 185, 193 (3d Cir. 2011). An evidentiary hearing may be held under AEDPA if (a) the petitioner's allegations state a *prima facie* claim for habeas relief and are not conclusory or contradicted by the record, and (b) the hearing is neither excluded by § 2254(e)(2), *see Palmer v. Hendricks*, 592 F.3d 386, 392-93 (3d Cir. 2010), nor impermissibly expands the state court record, *see Pinholster*, 131 S. Ct. at 1398-1400.

III.

Moore alleges five errors which, he submits, compel the issuance of a writ of habeas corpus, or in the alternative, a remand for an evidentiary hearing.

A.    Prejudicial Appearance at Trial

B.    Prejudicial Publicity

C.    Irreconcilable Differences with Counsel

D.    *Brady* Violations

E.    Ineffective Assistance of Counsel

We address the five errors in turn.

## A. *Prejudicial Appearance at Trial*

On direct appeal, the Supreme Court of Pennsylvania rejected Moore's argument that his physical appearance at trial, coupled with instructions to ignore his appearance, violated the Sixth and Fourteenth Amendments. Moore contends that the Pennsylvania Supreme Court unreasonably applied *Estelle v. Williams*, 425 U.S. 501 (1976), and its progeny, both because his prison clothing, shackles, cuffs, and bandage visibly marked him as a prisoner, and because it did not subject the trial court's instructions to "close judicial scrutiny." Based on the record before the state court when his claim was adjudicated on the merits, *see Pinholster*, 131 S. Ct. at 1399-1400, we conclude that Moore is not entitled to habeas relief.

Because we must restrict our review under § 2254(d) to the record that was before the state court when the claim was adjudicated on the merits, *see id.*; *Greene*, 2011 WL 5335411, at *3, we first address Moore's contention that his allegations of being shackled and cuffed constitute part of that record. We do not see how these allegations satisfy this requirement: Moore's physical appearance claim was adjudicated on the merits on direct appeal only, at which time Moore did not proffer evidence that he appeared before the jury shackled and cuffed. When he presented these allegations in his PCRA appeals, the Pennsylvania Supreme Court dismissed them in accordance with the procedural bar

11

against previously litigated claims, and never reached the merits.[1]  Thus, we may not consider the evidence on habeas review.[2]

Moore contends that *Pinholster* only concerns supplementary evidence that was never submitted to the state courts, 131 S. Ct. at 1397, whereas he submitted this evidence in his PCRA appeal.  Even if we were to accept Moore's contention, § 2254(e)(2) prohibits the requested evidentiary hearing because Moore's own lack of diligence prevented the state court from considering the complete claim, *see Taylor v. Horn*, 504 F.3d 416, 436-37 (3d Cir. 2007); as he readily concedes, any evidence that he appeared before the jury in shackles and handcuffs was available many years earlier on direct appeal.  Moreover, Moore's proffer does not make out the requisite *prima facie* claim for habeas relief.  *See Palmer*, 592 F.3d at 392-93.  *Estelle* is premised on the defendant's appearance prejudicing the jury, 425 U.S. at 504, but at argument, counsel conceded that the film footage and photographs do not indicate that Moore was ever

---

[1] The fact that the "previously litigated" rule does not present a procedural bar to habeas relief, *Boyd v. Waymart*, 579 F.3d 330, 368-71 (3d Cir. 2009) (Hardiman, J., dissenting) (en banc), does not change this result.  It is precisely *because* the physical appearance claim was adjudicated on the merits that we apply AEDPA's standards for reviewing the claim.  *See Taylor v. Horn*, 504 F.3d 416, 436-37 (3d Cir. 2007).

[2] We reject Moore's argument that, in the alternative, we should hear the claim *de novo* because these allegations constitute a discrete claim which the state court failed to adjudicate on the merits.  *See Cone v. Bell*, 129 S. Ct. 1769, 1780-81 (2009); *Wilson v. Beard*, 589 F.3d 651, 658-69 (3d Cir. 2009).  As Moore stated at oral argument, he submitted a physical appearance claim on direct appeal, and then a more "complete" claim in his PCRA petition.  Thus, it is clear that these allegations are part and parcel of Moore's physical appearance claim.

12

presented to the jury in a prejudicial way. Therefore, even with this evidence, habeas relief would be precluded, and a hearing may not be granted.

Restricting our review accordingly, we cannot say that the state court unreasonably applied *Estelle*. In *Estelle*, the Supreme Court held that a defendant may not be compelled to wear prison clothing at trial. 425 U.S. at 512. Critically, *Estelle* required a showing that the defendant was clothed as a prisoner involuntarily, which could be satisfied only if a defendant had initially objected to his appearance. *Id.* at 512-13. The state court fully adhered to *Estelle*'s holding, noting that even if Moore were clothed as a prisoner, he was not entitled to relief because he could not demonstrate that he was *compelled* to dress in that manner. The record does not suggest otherwise, and so we will not grant habeas relief on this basis.

Nor do we accept Moore's argument that *Estelle*, 425 U.S. at 504-05, and *Holbrook v. Flynn*, 475 U.S. 560, 562 (1986), clearly established an "inherent prejudice test" requiring "close judicial scrutiny" of the trial judge's instructions concerning Moore's appearance. *Carey v. Musladin*, 549 U.S. 70, 76 (2006), expressly rejected the notion – asserted implicitly by Moore – that the inherent prejudice test articulated in *Estelle* and *Holbrook* should be construed as clearly established where the Court "ha[d] never applied the test" and the its applicability remained "an open question in [Supreme Court] jurisprudence." Though *Musladin* concerned spectator conduct, the same may be said here: at the time of the state court's decision, *see Greene*, 2011 WL 5335411, at *3, the Supreme Court had never applied the inherent prejudice test to a trial court's

13

*instruction* to disregard a defendant's physical appearance. Thus, *Estelle* and *Holbrook* provide no solace for Moore, and he is not entitled to habeas relief on this claim.

## B. *Prejudicial Publicity*

In his second argument, Moore contends that the state court violated his right to a fair trial by failing to change venue in response to pre-trial publicity and coverage of Moore's alleged role in a prison altercation.[3] We do not find habeas relief appropriate.

First, Moore incorrectly asserts that AEDPA does not apply because the state courts never adjudicated this claim on the merits. Where, as here, an issue is considered by a state court in the prejudice prong of an ineffective assistance of counsel claim, we treat it as an adjudication on the merits. *See Albrecht v. Horn*, 485 F.3d 103, 116 (3d Cir. 2007). The state court adjudicated the "change of venue" argument in the prejudice prong of his post-trial motion on ineffective assistance of counsel, finding the publicity neither "so overwhelming as to saturate the community," nor "so close in time to the trial that the possible prejudice . . . could not have been dissipated." In any event, AEDPA would still apply to the state court's cursory dismissal of the claim on direct appeal. *See Harrington v. Richter*, 131 S. Ct. 770, 783-85 (2011).

Although Moore's argument does not address our review under AEDPA, he cannot show that "'there was no reasonable basis' for the [state court's] decision."

---

[3] In the alternative, Moore suggests that the trial judge should have held a mid-trial *voir dire* rather than issuing jury instructions to address Moore's alleged involvement in the riot. But he has not identified any clearly established federal law mandating such action and prohibiting the challenged instructions.

14

*Pinholster*, 131 S. Ct. at 1402 (quoting *Harrington*, 131 S. Ct. at 784). The clearly established federal law which he identifies, *Sheppard v. Maxwell*, 384 U.S. 333, 356-57 (1966), and *Rideau v. Louisiana*, 373 U.S. 723, 724-27 (1961), held that trial in a community that has been confronted with a "deluge" of prejudicial and inflammatory publicity deprives a defendant of due process. The publicity at issue here was not nearly as inflammatory or pervasive as "the spectacle of [the defendant] personally confessing" in *Rideau*, 373 U.S. at 726, or live reenactments and voluminous news clippings in *Sheppard*, 384 U.S. at 350-58. Even though, as Moore observes, 97% of the thirty jurors called for *voir dire* admitted to having been exposed to *some* publicity, "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved," *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), and so we decline Moore's invitation to presume juror impartiality on such grounds. At the very least, fair-minded jurists would disagree whether the publicity required a change of venue, *see Harrington*, 131 S. Ct. at 786, and therefore, we decline to grant habeas relief on this claim.[4]

---

[4] For the same reasons, we reject Moore's argument that trial counsel was ineffective for failing to move for a change of venue. The trial judge had already rejected his motion before the first trial, and was clearly disinclined to allow it at this point based on the denial of Moore's motion for mistrial. Thus, we cannot say that there is a reasonable probability that the result of the proceeding would have been different if a change of venue had been requested. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

15

C. *Conflict of Interest*

Moore argues that the failure to hold a hearing during trial in response to his motion for new counsel and defense counsel's motion to withdraw was an unreasonable application of *Wood v. Georgia*, 450 U.S. 261 (1981), and *Holloway v. Arkansas*, 435 U.S. 475 (1978). In *Wood*, 450 U.S. at 268-71, and *Holloway*, 435 U.S. at 483-84, the Supreme Court held that an attorney's joint representation of co-defendants presents such an inherent risk of a conflict of interest that a hearing is required to consider potential violations of the Sixth Amendment right to counsel. However, the Sixth Amendment is not meant "to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Rather, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyers as such." *Id.* at 160.

Moore failed to assert that counsel was involved in a joint representation that could create a conflict of interest, and instead asserted that there were "irreconcilable differences."[5] The trial court determined that counsel had been diligent and effective, that Moore's allegations "lacked substance," and that granting the motion on the eve of trial would cause delay. On direct appeal, the Pennsylvania Supreme Court held that, in

---

[5] At argument, Moore's counsel insinuated that the underlying "irreconcilable differences" were based on a joint representation of both Moore and Anthony Jones. However, that was never mentioned in briefs submitted on appeal, and there is no mention of it anywhere in either the state court record or the opinion of the District Court. Thus, we will not credit such an allegation at this juncture.

16

doing so, the trial court did not abuse its discretion because Moore had "failed to allege facts to reasonably support this claim." *Commonwealth v. Moore*, 633 A.2d 1119, 1126 (Pa. 1993). The state courts thus followed clearly established law as articulated in Supreme Court precedent, and habeas relief may not be granted.[6]

## D. *Brady* Violations

Moore petitions for habeas relief under § 2254(d)(1) on the grounds that the state courts' adjudication of his *Brady* claim was contrary to or an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Moore further contends that he is entitled to relief under § 2254(d)(2) insofar as the state court dismissed his *Brady* claim without conducting a hearing or making findings of fact based on his evidentiary proffers. *See Fahy v. Horn*, 516 F.3d 169, 183 (3d Cir. 2008). Moore requests an evidentiary hearing on the alleged *Brady* violations to develop the evidence he diligently presented in state court. *See id.* Because the District Court "dismisse[d] [Moore's] habeas petition based solely on a review of the state court record without holding its own evidentiary hearing, our standard of review . . . is plenary." *Marshall*, 307 F.3d at 49.

Where, as here, a petitioner diligently attempted to develop the factual basis of a claim in state court, *see* § 2254(e)(2), an evidentiary hearing is available if the evidence, as alleged, states a *prima facie* claim entitling the petitioner to habeas relief, *see Palmer*,

---

[6] Consequently, Moore fails to state a prima *facie claim* for habeas relief, and therefore an evidentiary hearing, which he requests, is neither necessary nor appropriate to resolve this claim. *See Palmer v. Hendricks*, 592 F.3d 386, 392-93 (3d Cir. 2010).

17

592 F.3d at 392-93, and the factual allegations are not conclusory, frivolous, or contravened by the existing record, *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Palmer*, 592 F.3d at 395.[7] We will grant the request for an evidentiary hearing.

Moore proffers evidence which, if true, would state a *prima facie Brady* claim entitling him to habeas relief. *See Schriro*, 550 U.S. at 474. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Under *Brady*, evidence is considered "material" where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, in *Bagley*, 473 U.S. at 676, and *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Supreme Court clearly established that *Brady* "applies with equal force to the prosecutor's failure to disclose evidence which could have been used for impeachment purposes." *Wilson v. Beard*, 589 F.3d 651, 659 (3d Cir. 2009); *see also Lambert v. Beard*, 633 F.3d 126, 133 (3d Cir. 2011).

---

[7] Because the allegations underlying this claim were on the state court record when this claim was adjudicated, and because a hearing would not supplement the state court record, *Pinholster*, 131 S. Ct. at 1398-1400, plays no role in our analysis.

18

The facts proffered by Moore constitute material impeachment evidence under this clearly established federal law.[8] Moore alleged – and provided sworn affidavits in support of his allegations – that the prosecutors and FBI pressured and intimidated two critical witnesses (Ricardo Scott and Juanita Lancaster) into giving perjured testimony implicating Moore in the robbery, and intimidated Rush, an alibi witness, from testifying. This is hallmark *Brady* material:  not only would the defense have been able to undermine the credibility of Scott and Lancaster, but would also have been able to present testimony to corroborate Moore's alibi.  *See*, *e.g.*, *Simmons v. Beard*, 590 F.3d 223, 235 (3d Cir. 2009).  In conjunction with Ms. Romanchick's shaky testimony, this would have gone a long ways towards neutralizing the prosecution's case.  *See Wilson*, 589 F.3d at 662.

The Pennsylvania Supreme Court rejected Moore's *Brady* claim on the grounds that "none of [the proffered] evidence as alleged tends to prove Moore's innocence of the crime," but rather "smear[s] the Commonwealth's case by those averments of misconduct." *Commonwealth v. Moore*, 860 A.2d 88, 95 (Pa. 2004).  However, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. United States*, 514 U.S. 419, 434 (1995).  Thus, it is clear that the state court's

---

[8] The parties do not dispute whether the prosecution had possession of the evidence, or that it did not disclose the information.  Thus, we restrict our review to the question of materiality.

consideration of Moore's claim constitutes an unreasonable application of the materiality standard, resulting in a disposition contrary to clearly established Supreme Court precedent. Under the proper application of *Brady*, the evidence as alleged is material.

We find no reason to deny a hearing on Moore's *Brady* evidence. The record shows that Moore diligently presented these claims in state court, rendering § 2254(e)(2) inapplicable. Nor does the evidence consist solely of "bald assertions and conclusory allegations." *See Palmer*, 592 F.3d at 393. Moore has provided sworn affidavits by all of the witnesses whom he would present, and the affidavits detail precisely what these witnesses would testify to if a hearing were held. Therefore, a hearing is appropriate to consider the evidence underlying Moore's *Brady* claim.

### E. *Ineffective Assistance of Trial Counsel*

In his final argument, Moore contends that the state court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), to his claim of ineffective assistance of counsel during trial. As was the case with his *Brady* claim, evidence presented in support of the *Strickland* claim has never been fully considered, so Moore requests a remand to the District Court for an evidentiary hearing.[9] *See Fahy*, 516 F.3d at 183.

To prevail under *Strickland*, a petitioner must prove that counsel's performance at trial was deficient, in that it "fell below an objective standard of reasonableness,"

---

[9] As with the *Brady* claim, the allegations underlying this claim were on the state court record when this claim was adjudicated on the merits, and therefore *Pinholster*, 131 S. Ct. at 1398-1400, plays no role in our analysis.

20

*Strickland*, 566 U.S. at 688; *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001), and that, but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 687, 694. Under *Strickland*'s clear mandate, the prejudice of these errors is assessed cumulatively. *See id.* at 690, 695-96; *Williams v. Taylor*, 529 U.S. 362, 395-96, 398-99 (2000). On habeas, our standard of review of a state court's decision under *Strickland* is "doubly deferential." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). We employ a "strong presumption" that trial counsel was reasonable, *Jermyn*, 266 F.3d at 282, in addition to applying AEDPA deference. § 2254(d)(1).

We first address counsel's alleged errors. Moore argues that trial counsel was unreasonable for failing to impeach Juanita Lancaster with prior inconsistent statements and for failing to introduce co-defendant Jones as a witness. Counsel's failure to introduce evidence that contradicts a key witness's trial testimony is patently unreasonable. *See Berryman v. Morton*, 100 F.3d 1089, 1098 (3d Cir. 1996). Juanita Lancaster was one of three eyewitnesses to confirm Moore's involvement in the events of October 1, and impeachment material from her prior FBI statement would have contradicted her subsequent trial testimony. Likewise, Jones's affidavit indicates that he would have testified that Emmet Burgis, and not Moore, was the shooter at the Forty-Fort robbery, which would have directly contradicted the prosecution's key witnesses. Counsel was unreasonable in both respects.

We also agree that counsel was unreasonable for failing to fully impeach Scott based on his deal with the prosecution and his prior convictions. Scott was one of three key witnesses in the case, and therefore reasonable counsel would have fully undermined his credibility by introducing the reduction of his prison exposure from 60 to 20 years and the reduced charge from first to third-degree murder. However, we cannot say that counsel was unreasonable for failing to impeach Scott based on his previous inability to describe precisely how Moore ended up shooting Romanchick. Moore's defense rested on an alibi theory, and because Scott's statement was otherwise consistent with his trial testimony, it could have done additional damage if introduced on cross.

Moore also contends that counsel was ineffective for failing to investigate and present potential defense witnesses, Sarah Lancaster and Willie Rush. It is a hallmark of *Strickland* that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691; *Berryman*, 100 F.3d at 1101. Based on statements made by other witnesses, counsel knew that Sarah Lancaster was present at McGoy's residence and had ridden in the vehicle with McGoy and two of the robbers, of which Moore was allegedly one. Thus, it was unreasonable not to further investigate the allegedly false information contained in her FBI statement. However, we cannot say that counsel was unreasonable in not investigating Willie Rush after learning from both his defense investigator and from the prosecution that Rush was unavailable and had nothing to say. At the very least, the state court was not unreasonable for finding that counsel was not ineffective in that regard.

22

Having determined that counsel performed unreasonably in these respects – failing to impeach Juanita Lancaster with prior inconsistent statements; failing to present Jones as a defense witness to contradict the government's case; failing to impeach Scott; and failing to investigate Sarah Lancaster as a potential witness – we also conclude that, based on Moore's allegations, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Counsel could have undermined or impeached the testimony of two of the Commonwealth's three witnesses, and directly refuted the testimony of the third witness that Moore participated in the crime. The state court, however, based its determination on an outcome determinative standard: that Moore had "fail[ed] to demonstrate the result at trial would have differed but for counsel's performance." *Commonwealth v. Moore*, 860 A.2d 88, 96 (Pa. 2004). Thus, the state court's rejection of Moore's ineffective assistance of counsel claim was contrary to and an unreasonable application of *Strickland*, *see Williams*, 529 U.S. at 405-06, and Moore's allegations make out a *prima facie* case entitling him to habeas relief. *See Schriro*, 550 U.S. at 474.

Moore was diligent in presenting the facts underlying his *Strickland* claim in state court, *see* § 2254(e)(2); *Palmer*, 592 F.3d at 394 n.4, and has provided fully detailed affidavits in support of the claim. *See id.* at 395. Thus, we will remand this matter to the District Court to conduct an evidentiary hearing on Moore's claims of ineffective assistance of counsel for which he has demonstrated a prima facie case for habeas relief.

23

IV.

For the foregoing reasons, we will affirm the judgment of the District Court dismissing Moore's habeas petition as to his appearance at trial, prejudicial publicity and personal conflicts with counsel. We will reverse and remand for evidentiary hearings on the *Brady* and ineffective assistance of counsel claims.