NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-4042

———————

TYRONE MOORE

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
SUPERINTENDENT GRATEFORD SCI; ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA,

Appellants

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-05-cv-00828)
District Judge: Honorable Christopher C. Conner

———————

Submitted Under Third Circuit LAR 34.1(a)
October 7, 2015

Before: MCKEE, Chief Judge, AMBRO, and HARDIMAN, Circuit Judges

(Opinion filed: February 22, 2016)

———————

OPINION*

———————

AMBRO, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

The Commonwealth of Pennsylvania appeals the District Court's order granting *habeas corpus* relief to Tyrone Moore. The Commonwealth argues that such relief is unwarranted because Moore did not present evidence that his counsel was ineffective for failing to cross-examine adequately the prosecution's central witness, Moore's co-defendant Ricardo Scott, and for failing to investigate or present adequately an exculpatory defense witness, Moore's co-defendant Anthony Brad Jones. For the reasons that follow, we affirm.

## I.

On October 1, 1982, an armed robbery at the Forty-Fort Animal Hospital in Luzerne County, Pennsylvania, resulted in the death of Nicholas Romanchick. During the robbery, as the two armed robbers were tying up the four victims (Mr. Romanchick, his wife Karen Romanchick, and two others), one of the robbers shot Mr. Romanchick. The robbers fled, and Mr. Romanchick died 13 days later from the gunshot wound.

Law enforcement believed that the Forty-Fort robbery was related to an armed bank robbery in Chinchilla, Pennsylvania. Surveillance photographs from the Chinchilla robbery led law enforcement to identify four suspects: Kenneth McGoy, Anthony Brad Jones, Ricardo Scott, and Tyrone Moore. In the course of law enforcement's investigation, Scott confessed to the FBI that he, Moore, and Jones had driven to the Forty-Fort Animal Hospital to commit the robbery, and that Moore shot Mr. Romanchick. None of the robbery victims saw Moore fire the fatal shot, and Ms. Romanchick identified Moore as the shooter in testimony we previously described as "shaky." *Moore v. Sec'y Pa. Dep't of Corr.*, 457 F. App'x 170, 182 (3d Cir. 2012).

2

Moore was then arrested in connection with the Forty-Fort robbery and Mr. Romanchick's murder.

At Moore's second trial,[1] although other witnesses testified that Moore participated in the Fort-Fort robbery, Scott was the only co-defendant to testify against Moore. Scott testified that he had given his gun to Moore just before Moore shot Mr. Romanchick. Scott testified against Moore pursuant to a plea agreement and received numerous benefits in exchange for his testimony. Moore's counsel, Joseph Yeager and Patrick Flannery, did not cross-examine Scott about those benefits or his plea agreement.

Moore presented an alibi defense. He and McGoy testified that Moore was not with Scott on the night of the Forty-Fort robbery. During Moore's trial, his counsel had Jones brought to the courthouse, but spoke with Jones for no more than ten minutes and then did not call Jones as a witness. Moore's counsel did not interview or investigate Jones's usefulness as a defense witness at any other time. After Moore's trial, Jones repeatedly and consistently testified that someone other than Moore committed the Forty-Fort robbery with Scott.

At the conclusion of the trial, the jury returned a verdict of guilty, and Moore was sentenced to death. In post-trial motions and on direct appeal, Moore argued that trial counsel was ineffective for various reasons, including: (1) failing to cross-examine adequately Scott about the benefits he received in exchange for his testimony against Moore; (2) failing to investigate adequately potential alibi witnesses, including Jones; and

---

[1] The first resulted in a mistrial for reasons unrelated to this appeal.

(3) failing to introduce any mitigation evidence in the penalty phase. The Pennsylvania courts rejected those arguments. *Commonwealth v. Moore*, 633 A.2d 1119 (1993).

Moore then filed for relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), raising the same arguments that he raised on direct appeal. The PCRA court held that Moore's counsel was ineffective for failing to introduce any mitigation evidence in the penalty phase and vacated Moore's death sentence. The PCRA court rejected Moore's remaining claims, and the Pennsylvania Supreme Court upheld the ruling of the PCRA court. *Commonwealth v. Moore*, 860 A.2d 88 (2004). On remand, Moore was re-sentenced to life imprisonment.

Later, Moore petitioned for *habeas* relief pursuant to 28 U.S.C. § 2254 in the U.S. District Court for the Middle District of Pennsylvania. In his petition, Moore again argued that his trial counsel was ineffective for, among other things, (1) failing to cross-examine Scott adequately about the benefits he received in exchange for his testimony and (2) failing to investigate adequately potential alibi witnesses, including Jones. The District Court denied relief. *Moore v. Beard*, Civ. A. No. 1:05-CV-0828, 2007 WL 4370900 (W.D. Pa. Dec. 11, 2007).

Moore appealed and we reversed. We explained that his representation at trial was deficient because counsel failed to impeach Scott based on his deal with the prosecution. *Moore*, 457 F. App'x at 182 ("Scott was one of three key witnesses in the case, and therefore reasonable counsel would have fully undermined his credibility by introducing the reduction of his prison exposure from 60 to 20 years and the reduced charge from first- to third-degree murder."). We also concluded that Moore received ineffective

4

assistance because his counsel failed to investigate or present Jones as an exculpatory witness. *Id.* ("Jones's affidavit indicates that he would have testified that Emmet Burgis, and not Moore, was the shooter at the Forty-Fort robbery, which would have directly contradicted the prosecution's key witnesses."). Noting also that the Pennsylvania Supreme Court used the wrong standard to determine whether counsel's unreasonable representation prejudiced Moore, we held that "the state court's rejection of Moore's ineffective assistance of counsel claim was contrary to and an unreasonable application of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)], and Moore's allegations make out a *prima facie* case entitling him to habeas relief." *Id.* at 183 (internal citations omitted). We remanded the case to the District Court "to conduct an evidentiary hearing on Moore's claims of ineffective assistance of counsel for which he has demonstrated a prima facie case for habeas relief." *Id.*

At the evidentiary hearing, the District Court heard evidence about whether there could have been a strategic reason for not fully impeaching Scott or not thoroughly interviewing Jones. No witness could think of any reason for not cross-examining Scott about the benefits he received in exchange for his testimony against Moore; and Yeager admitted that Jones's testimony would have been helpful, but counsel did not meaningfully investigate Jones during their brief meeting.[2] The District Court concluded that counsel's failure to impeach Scott and to interview Jones thoroughly entitled Moore to *habeas* relief. This appeal followed.

---

[2] Flannery had no independent recollection of Moore's trial, and Jones died before the evidentiary hearing took place.

## II.

We have jurisdiction under 28 U.S.C. §§ 1291, 2253(a).  Our review over the District Court's legal conclusions is *de novo*, but we review its factual conclusions under a clearly erroneous standard.  *See Whitney v. Horn*, 280 F.3d 240, 249 (3d Cir. 2002).

## III.

To prove ineffective assistance of counsel under *Strickland*, Moore must prove "(1) that his trial counsel's performance was 'deficient, that is, it fell below an objective standard of reasonableness,' and (2) 'that counsel's deficient performance prejudiced' him, *i.e.*, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014) (quoting *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007)).  Moore must also "overcome the presumption that, under the circumstances, the challenged action[s] might be considered sound trial strategy."  *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (internal citations and quotation marks omitted).  Whether "counsel had a trial strategy" is a finding of fact that will not be disturbed unless it is clearly erroneous, but "whether counsel's strategy was reasonable" is a question of law that is reviewed *de novo*.  *Id.*

The Commonwealth argues that there was no evidence before the District Court to support a finding that Moore's trial counsel was ineffective for (1) failing to cross-examine Scott adequately about the benefits he received in exchange for his testimony and (2) failing to investigate and present adequately Jones as an exculpatory witness.  More specifically, the Commonwealth argues that Moore failed to present evidence to

overcome the "strong presumption" that counsel's performance was reasonable. *See Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). It contends that the District Court was "unable to reconstruct, beyond pure speculation, any logical rationale for many of defense counsel's decisions during trial," (Addendum to App. 3,) leaving the record without support for a finding that Moore's counsel were ineffective.

We disagree. There was a sufficient evidentiary basis for the District Court to find that Moore's counsel acted unreasonably and that their deficient performance prejudiced Moore.[3]

With respect to counsel's failure to impeach Scott adequately, Yeager testified that it would have been helpful and consistent with Moore's trial strategy to cross-examine Scott about the benefits he received in exchange for testifying against Moore. (App. 45-46.) Neither Moore's trial counsel nor the prosecuting attorney could imagine a trial strategy that would have been furthered by omitting such cross-examination. In the face of Yeager's testimony that impeaching Scott would have furthered Moore's cause at trial, and in the absence of any evidence to suggest there was a strategic reason not to impeach Scott in that manner, the evidence in the record before the District Court was sufficient to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Jermyn*, 266 F.3d at 282 (3d Cir. 2001). Although Yeager was not the attorney who actually cross-examined Scott, we decline to rule, as the

---

[3] Because we affirm the District Court, we need not address the additional grounds for *habeas* relief advanced by Moore on appeal.

7

Commonwealth urges, that Moore cannot meet his burden simply because the attorney who cross-examined Scott no longer recalls what happened at trial.

With respect to Jones's potential exculpatory testimony, Yeager testified that he and Flannery were "wrong" not to interview Jones thoroughly. (App. 65-66.) Although there is no evidence that Jones made any exculpatory statements during his brief meeting with Moore's counsel or at any other time before or during Moore's trial, Jones consistently affirmed in his later statements that Moore was not involved in the Forty-Fort robbery. Hence counsel is deficient where, as here, they did not fully investigate a witness that they knew may be exculpatory. *See, e.g.*, *Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). We give due deference to the need to "guard against the temptation to engage in hindsight," *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002), but in light of counsel's admission that it was "wrong" not to investigate further Jones's usefulness as an exculpatory witness, and in the absence of any evidence to suggest that the decision not to interview Jones thoroughly supported any sound trial strategy, the District Court did not err in finding that counsel's performance was deficient.

As for the second prong of *Strickland*, the Court also did not err when it concluded that counsel's deficient performance at trial prejudiced Moore. First, Scott was a critical witness for the prosecution. He was the sole co-defendant to testify against Moore and he provided many details about Moore's alleged involvement in the robbery—including his testimony that Moore was in possession of both guns when Mr. Romanchick was shot—

8

that were otherwise not in evidence. By impeaching Scott with strong evidence of his motive to testify for the prosecution, Moore's counsel would have largely neutralized his testimony and prevented it from bolstering the prosecution's other evidence. Second, if Moore's counsel had thoroughly interviewed Jones and then presented him as an exculpatory witness, Jones's testimony would have been critical to Moore's case. As the District Court correctly explained, Jones's testimony would have contradicted Scott's account of the Forty-Fort robbery and would have supported Moore's version of events. When counsel's failures are viewed together, they create "a reasonable probability that, but for [their] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

*    *    *    *    *

We have considered the Commonwealth's remaining arguments and find them unpersuasive. The District Court properly concluded that Moore's counsel was ineffective and that their deficient representation prejudiced Moore. Thus we affirm.

HARDIMAN, <u>Circuit Judge</u>, concurring in the judgment.

I concur in the judgment reached by my colleagues, but write separately to note my disagreement with a prior decision by a panel of our Court. *See Moore v. Sec'y Pa. Dep't of Corr.*, 457 F. App'x 170 (3d Cir. 2012). The panel in *Moore* failed to give proper deference under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and ordered an evidentiary hearing that was not permitted under federal law. *See* 28 U.S.C. § 2254(e)(2); *Morris v. Beard*, 633 F.3d 185, 193 (3d Cir. 2011); *Palmer v. Hendricks*, 592 F.3d 386, 391–93 (3d Cir. 2010). Nevertheless, the law of the case doctrine requires me to follow our prior panel's decision and review this case accepting the procedural posture in which it arises. *See In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). For that reason, I concur in the judgment only.