J-S08005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALEXIS YNIRIO | |
| Appellant | No. 1202 MDA 2020 |

Appeal from the Judgment of Sentence entered June 18, 2020
In the Court of Common Pleas of Berks County
Criminal Division at Nos: CP-06-CR-0004048-2019

BEFORE:  STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED: DECEMBER 22, 2021**

Appellant, Alexis Ynirio, was charged in a one-count information with multiple acts of theft from his employer, Axis Self Storage, Inc. ("Axis").  The trial court, sitting without a jury, found Appellant guilty of theft by failure to make required disposition of funds received,[1] graded his offense as a third-degree felony, and sentenced him to four years' probation and restitution of $2,983.44.   Appellant argues, *inter alia*, that the trial court abused its discretion by permitting hearsay evidence in a spreadsheet that purported to chart the dates on which he had sole access to stolen funds.  Although we agree that the spreadsheet was inadmissible hearsay, we conclude for reasons given below that its admission was harmless error.  Accordingly, we affirm the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3927.

judgment of sentence except for the amount of Appellant's restitution, which we remand to the trial court for downward modification.

We begin by summarizing the evidence adduced during Appellant's non-jury trial. Axis operates 23 storage units in Pennsylvania, New Jersey and New York. N.T., Trial, 3/16/20, at 6. Axis's main office is in Frazer, Pennsylvania. *Id.* at 8-9. Edward DiMarcantonio, Axis's owner, testified that between March and June 2019, Appellant was an employee at Axis's storage facility in Reading, Pennsylvania. *Id.* at 6-8. Only two employees worked at this facility: Appellant, a site manager, and Carlos Fuentes, Appellant's superior, a senior site manager. *Id.* at 7, 9, 41-42.

The Commonwealth accused Appellant of stealing funds from Axis on fifteen separate dates in 2019. The parties stipulated that on the fifteen days in question, twenty Axis customers gave Appellant rental payments either in the form of cash or money orders.[2] Commonwealth Exhibit 1. The Commonwealth contended that Appellant kept the cash and money orders instead of forwarding them to Axis's main office in Frazer.

DiMarcantonio testified that Appellant and Fuentes used different procedures for forwarding customer payments from the Reading facility to the Frazer office. Appellant was required to convert all cash payments during each business day into a money order at a nearby Turkey Hill convenience store. Appellant would mail that money order, along with any other money

---

[2] The money orders themselves were not submitted into evidence.

orders and checks received that day and a daily deposit report, to the Frazer office. N.T., 3/16/20, at 8-10, 54. Fuentes, as a senior employee, did not have to mail payments to the Frazer office. Instead, after converting cash payments into a money order, Fuentes had a device that would "remote capture" money orders and checks and deposit them directly into the bank. *Id.* at 10-11.

In mid-April 2019, upon reviewing bank reconciliations, DiMarcantonio noticed that deposits were missing, because Axis's computer records for monies received at the Reading facility did not match the bank statements. *Id.* at 11-12. DiMarcantonio testified that on fifteen different dates between March 11, 2019 and June 29, 2019, Appellant received cash and money order payments from customers at the Reading facility, but these proceeds never arrived at the Frazer office. *Id.* at 13-37.

Fuentes testified that he did not take the missing proceeds. *Id.* at 92. In addition, Fuentes' testimony indicates that Appellant adjusted deposit records on one occasion to create the appearance that Fuentes took proceeds instead of Appellant. On May 25, 2019, Lukeisha Gonzalez paid rent of $620.50 in cash to Appellant at the Axis property in Reading. Commonwealth Exhibit 1 (parties' stipulation). On the same day, Fuentes testified, Appellant typed on a daily deposit report that Fuentes deposited $620.50. *Id.* at 90-91. The following Tuesday, Fuentes checked with Appellant, and Appellant said that he (Appellant) had sent the payment to Frazer. *Id.* Fuentes wrote

"[Appellant] sent to Frazer" on the deposit sheet to reflect what Appellant told him. *Id.* at 91.

The Commonwealth contended that on the dates in question, Appellant was the only employee present at the Reading facility at the time of closing and therefore had the opportunity to steal customer payments. Axis required all employees to submit weekly time sheets and send in emails each day when they clock in and out of work. *Id.* at 38-39. The time sheets and emails are kept in Axis's computer, and DiMarcantonio is the custodian of these records. *Id.* at 39-40. Based on the emails and timesheets, DiMarcantonio created an Excel spreadsheet that purported to show who was present on the fifteen days in question and the amount of money missing on each date. *Id.* at 40; Commonwealth Exhibit 3 (spreadsheet). The Commonwealth did not submit the emails or timesheets themselves into evidence. Appellant objected to the spreadsheet on the ground that it was not a business record because it was created "in anticipation of prosecution of this case." N.T., 3/16/20, at 40; *see also id.* at 100 (same objection). The court overruled the objection, *id.* at 41, and admitted the spreadsheet into evidence. *Id.* at 101.

The spreadsheet indicated that on two of the fifteen days in question (May 11, 2019 and May 25, 2019), Fuentes was present at the Reading facility but left before closing. Commonwealth Exhibit 3; N.T., 3/16/20, at 41-42 (DiMarcantonio). The spreadsheet indicated that on the remaining dates, Appellant was by himself all day. Commonwealth Exhibit 3. The total amount of missing proceeds was $2,983.44. *Id.*

Evidence other than the spreadsheet indicates that Appellant was the only employee present at closing on twelve of the fifteen days. On these twelve dates, Appellant's initials, "AP," appeared on the facility's daily deposit reports. Commonwealth Exhibit 2. Appellant admitted[3] that he closed out the account on days when his initials appeared on the daily deposit reports.[4] N.T., 3/16/20, at 123-24. Appellant also admitted that he "normally" closed out the account on days when Fuentes was not there, *id.* at 138, which meant that Appellant was alone on days he closed out the account.

DiMarcantonio asked Appellant about the missing payments. Appellant claimed that he sent everything to Frazer, but after DiMarcantonio confronted him, he failed to produce receipts for any of the money orders he claimed to have obtained from Turkey Hill. *Id.* at 45-48. Appellant claimed that he threw out the receipts while cleaning his car. *Id.* at 130, 134.

The court found Appellant guilty of theft by failure to make required disposition of funds received, graded as a third-degree felony. On June 18, 2020, the court imposed sentence. Appellant filed timely post-sentence motions challenging the weight of the evidence, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

_____

[3] Appellant testified in his own defense.

[4] On the other three days, managers from other Axis facilities either closed the Reading account remotely or closed it while visiting the Reading facility. N.T., 3/16/20, at 30-33; Commonwealth Exhibit 2.

Appellant raises four issues in this appeal, which we reorder for the sake of convenience:

[1.] Whether the evidence presented by the Commonwealth at trial during its case-in-chief was legally insufficient to support a guilty verdict of theft by failure to make required disposition of funds received—and whether the lower court therefore erred in denying Appellant's mid-trial motion for judgement [*sic*] of acquittal?

[2.] Whether the verdict of guilt for theft went against the weight of the evidence where the Commonwealth's case was pretty well entirely, in all material respects, based on the complainant's nebulous word alone—his objectively uncorroborated suspicion— that Appellant (not another employee) stole (did not lose or negligently misdirect) the tenant-payments?

[3.] Whether the complainant's spreadsheet, introduced as Exhibit 3, was inadmissible, as it was not made in the regular course of business at or near the time of the alleged thefts, but rather comprised notes derived from months-old business records, compiled expressly for the purpose of a criminal trial.

[4.] Whether the evidence regarding the alleged theft of the money-orders was legally insufficient to support the lower court's finding that more than $2,000 had been stolen—thereby rendering his improperly graded felony-sentence illegal and requiring a remand for resentencing?

Appellant's Brief at 7-8.

Appellant's first argument is a challenge to the sufficiency of the evidence underlying his conviction. In reviewing a sufficiency claim, the standard we apply

is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

- 6 -

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014).

The Crimes Code defines theft by failure to make required disposition of funds received as follows:

A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a). With regard to whether the defendant uses the property "as his own," the Commonwealth "[does] not have to prove what Appellant actually did with the money." *Commonwealth v. Green*, 162 A.3d 509, 524 (Pa. Super. 2017). Theft of over $200.00 up to $2,000.00 is a first-degree misdemeanor, while theft of between $2,000.00 and $100,000.00 is a third-degree felony. 18 Pa.C.S.A. § 3903(a.1, b).

Viewing all evidence received in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to sustain Appellant's conviction under Section 3927. While there was no direct evidence

that Appellant took cash and money orders instead of sending them to the Frazer office, there was sufficient circumstantial evidence of his guilt. On all fifteen days in question, Appellant was the person who accepted the missing payments directly from customers. DiMarcantonio's spreadsheet indicates that Appellant was the only employee present at the time of closing on fifteen dates. On twelve dates, Appellant's initials on Axis's daily deposit reports, along with Appellant's testimony, demonstrate that he closed the account while he was the only employee present, thus placing him in a position where he could steal proceeds. He did not forward payments to Axis's main office in Frazer on any of these dates, and he failed to produce any receipts for Turkey Hill money orders, a key step in the forwarding procedure, after DiMarcantonio confronted him about the missing payments. Fuentes testified that he did not take the missing payments, and no discrepancies in payments were noted on the days that Fuentes closed the Reading location. Appellant, however, attempted to blame Fuentes for one missing payment by stating falsely on that day's deposit report that Fuentes deposited the payment.

Although we hold, *infra*, that the Excel spreadsheet was inadmissible, we still consider the spreadsheet when reviewing the sufficiency of the evidence. This is because "the question of sufficiency is not assessed upon a diminished record . . . Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial."

*Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989); *Commonwealth v. Tabb*, 207 A.2d 884, 886 (Pa. 1965) (in reviewing the sufficiency of the evidence, "all evidence actually received must be considered, whether the trial rulings thereon were right or wrong").  We therefore conclude, based on all evidence of record, including the Excel spreadsheet, that Appellant's challenge to the sufficiency of the evidence fails.

Next, we address Appellant's challenge to the weight of the evidence. No relief is due.  A motion for new trial on the ground that the verdict is contrary to the weight of the evidence

> concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.  An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror.  Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Rivera*, 238 A.3d 482, 495 (Pa. Super. 2020).  Further,

> [w]hen a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.  The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the

- 9 -

underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard. . . . When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Id.* at 497-98.

The trial court rejected Appellant's challenge to the weight of the evidence for the following reasons:

The Commonwealth presented evidence that [Appellant] was the only person in charge of the money on the days it went missing and that, although Axis Storage's payment system was not the best, there was no evidence to support that someone other than [Appellant] had taken the money. As previously stated, the parties stipulated to the fact that twenty customers handed their cash or money orders directly to [Appellant] in order to pay for rent.

[Appellant] avers that [] DiMarcantonio offered no testimony that [Appellant] used the money as his own and that the Commonwealth failed to present any evidence that [Appellant] intentionally dealt with the money as his own. Again, the Commonwealth does not need to prove where the money went or how it was used in order to prove that [Appellant] was the one who took the money. *Commonwealth v. Green*, 162 A.3d 509, 524 (Pa. Super. 2017).

This Court does not believe that the verdict was so contrary to the evidence as to shock one's sense of justice because, as the fact finder, this Court was able to make a decision based on the evidence presented. This Court was "free to believe all, part, or none of the evidence" and was to determine the credibility of the witnesses. *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011). As the factfinder, this Court believed that [] DiMarcantonio was credible and that the evidence the Commonwealth presented was credible and, in turn, properly led

J-S08005-21

this Court to the conclusion that [Appellant] was guilty of theft by failure to make required disposition of funds.

Pa.R.A.P. 1925 Opinion, 12/23/20, at 6-7. Upon review, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim, especially where, as here, a challenge to the weight of the evidence concerns the credibility of trial testimony. *Rivera*, 238 A.3d at 498.

We next address Appellant's third and fourth arguments, which concern whether the trial court abused its discretion by admitting the Excel spreadsheet as hearsay into evidence and, if so, the proper remedy for this error. We reject the argument that the Excel spreadsheet was admissible under the business records exception to the hearsay rule. The spreadsheet did not meet this exception because it was prepared in anticipation of litigation (Appellant's prosecution). The trial court abused its discretion by admitting the spreadsheet into evidence. Nonetheless, we also conclude that since this error did not affect Appellant's conviction for a third-degree felony, the error was harmless.

The decision whether to admit or exclude evidence is within the sound discretion of the trial court. *In Re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018). A reviewing court will not disturb these rulings absent an abuse of discretion. *Id.* Discretion is abused if, *inter alia*, the trial court overrides or misapplies the law. *Id.*

"Hearsay" is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to

- 11 -

prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Under the Pennsylvania Rules of Evidence, hearsay evidence is incompetent and inadmissible unless it meets an exception set forth in the Rules or one prescribed by our Supreme Court or statute. Pa.R.E. 802. Exceptions to the rule against hearsay have developed, however, "to allow the admission of specified types of evidence based upon (1) the necessity for such evidence, and (2) the circumstantial probability of its trustworthiness." *Bayview Loan Servicing, LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019). For example, the exception at issue in the present case, the business records exception, has developed due to "the circumstantial trustworthiness [that] arises from the regularity with which business records are kept and the reliance that businesses place on the accuracy of those records." *Id.*

The business records exception to the hearsay rule permits the admission of:

A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that

- 12 -

complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). Satisfaction of these requirements will "establish circumstantial trustworthiness" that "offset[s] the hearsay character of the evidence." *MB Financial Bank v. Rao*, 201 A.3d 784, 789 (Pa. Super. 2018).

We have held however, that "documents, reports, *etc.*, prepared in anticipation of litigation (which includes prosecution of a criminal offense) do not qualify for the business records exception." *Commonwealth v. Carter*, 861 A.2d 957, 963 (Pa. Super. 2004), *rev'd*, 932 A.2d 1261 (Pa. 2007). Such documents are not trustworthy, because the motivation for creating them is not to create an accurate record for regular business operations but to support a position in litigation. *Id.* at 962-63.

Although our Supreme Court reversed our decision in *Carter*, the preclusion of records prepared in anticipation of litigation as business records under *Carter* remains good law. The issue in *Carter* was whether a lab report identifying as cocaine items seized from the defendant at the time of his arrest was admissible under the business records exception. We held that the report was inadmissible because it "was prepared in anticipation of a criminal prosecution, by a laboratory under the aegis of the Pennsylvania State Police, in order to establish a critical element of the drug offense, *i.e.*, the existence

of a controlled substance."[5] ***Carter***, 861 A.2d at 963. The Supreme Court reversed. The Court reasoned that the report rested upon "basic, routine, and highly reliable" drug tests and that forensic chemists used "standardized, precise calculations" in creating the reports. ***Carter***, 932 A.2d at 1266. The Court held that

> such reports are not prepared "in anticipation of litigation" in the traditional sense; the information they contain is crucial in determining whether to prosecute at all. Absent any indication of wrongdoing on the part of law enforcement, the label of untrustworthiness cannot be attached to the report simply because of its source.

***Id.*** at 1268-69. Thus, the Court did not hold that records prepared in anticipation of litigation qualified as an exception to hearsay under the business records exception; it simply held the business records exception did not apply to the evidence before the Court. The inapplicability of the business records exception to the hearsay rule to records prepared in anticipation of litigation, has been infrequently cited since ***Carter***, and usually only in passing, but no post-***Carter*** decision has declared this principle invalid.[6]

---

[5] We went on to hold that admitting the lab report without the testimony of the forensic scientist who performed the test and prepared the report violated the defendant's right of confrontation. ***Carter,*** 861 A.2d at 969. In contrast, Appellant does not raise a Confrontation Clause argument in the present case. Nor does any Confrontation Clause issue exist, because the creator of the business record in question, DiMarcantonio, testified during trial and submitted himself to cross-examination.

[6] We also note that other jurisdictions do not admit records prepared in anticipation of ligation under the business records exception to the hearsay
*(Footnote Continued Next Page)*

Here, the spreadsheet prepared by DiMarcantonio was hearsay, since he created it from out-of-court statements (emails and timesheets) that he offered for their truth. The spreadsheet was created for the purpose of litigation, specifically, Appellant's prosecution. DiMarcantonio accused Appellant of stealing payments to Axis, N.T., Trial, 3/16/20, at 45-48, prepared the spreadsheet, and gave it to the police to persuade them to charge Appellant with theft. *Id.* at 64. There is no evidence that the spreadsheet was compiled for regular business purposes, or that DiMarcantonio created other spreadsheets such as this for use in regular

_____

rule. *See*, *e.g.*, *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (documents created in anticipation of litigation are not admissible as business records because "the purpose of the [business record] rule is to ensure that documents were not created for personal purpose[s] . . . or in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question"); *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000) ("The absence of trustworthiness is clear . . . when a report is prepared in the anticipation of litigation because the document is not for the systematic conduct and operations of the enterprise but for the primary purpose of litigating"); *People v. Tran*, 469 P.3d 568, 574 (Colo. App. 2020) ("unlike a business keeping records of its normal activities, a business preparing records for litigation has a strong incentive to portray the facts in a way that will help it avoid liability . . . And businesses do not routinely prepare these documents"). We regard these decisions as persuasive authority. *See Hvizdak v. Linn*, 190 A.3d 1213, 1224 (Pa. Super. 2018) ("we may rely on decisions of lower federal courts for persuasive authority"); *Ferraro v. Temple University*, 185 A.3d 396, 404 (Pa. Super. 2018) ("[A]lthough we are not bound by decisions from . . . courts in other jurisdictions, we may use them for guidance to the degree we find them useful, persuasive, and . . . not incompatible with Pennsylvania law").

business activities. Thus, the spreadsheet was not admissible as a business record under Pa.R.E. 803(6).

The Commonwealth concedes that "the spreadsheet itself is not kept in the ordinary course of the business," Commonwealth's Brief at 17, but nonetheless argues that it was admissible because "it [was] a compilation of information contained within records kept in the ordinary course of the business, and it was created by the custodian of those records [DiMarcantonio]. The compilation was simply created for the ease of review." *Id.* We disagree. The euphemism "created for ease of review" is an implicit admission that DiMarcantonio did not create the spreadsheet for regular business reasons but did so in anticipation of litigation, the very motive that renders the spreadsheet inadmissible under the business records exception.

We note that the spreadsheet might have been admissible had the Commonwealth made the underlying emails and timesheets available to Appellant for review or copying in advance of trial. *See* Pa.R.E. 1006 (proponent may use chart to prove content of voluminous writings if he makes originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place). We see no evidence in the record, however, that the Commonwealth availed itself of Rule 1006 by providing access to the emails and timesheets at a reasonable time before trial.

Because the spreadsheet was inadmissible, we must examine whether its admission was harmless error. "[A]n error can be harmless only if the

appellate court is convinced beyond a reasonable doubt that the error is harmless." **Commonwealth v. Story**, 383 A.2d 155, 162 (Pa. 1978). We may consider error harmless only where:

(1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Taylor**, 209 A.3d 444, 450 (Pa. Super. 2019). "Harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict. If there is a reasonable probability that an error may have contributed to the verdict, the error is not harmless." **Id.**

The error in admitting the spreadsheet into evidence was harmless as to the court's finding that Appellant committed theft on May 25, 2019. There was ample evidence, independent of the spreadsheet, that Appellant committed theft on that date and doctored the daily deposit report to make it appear that Fuentes sent the proceeds to Axis's main office instead of himself. Specifically, (1) a customer paid rent of $620.50 in cash to Appellant at the Axis establishment in Reading, (2) Appellant's initials appear on the daily deposit report for this date, demonstrating that he closed out the account by himself, (3) Appellant typed on the report that "Fuentes will deposit $620.50," (4) after Fuentes spoke with Appellant, Fuentes changed the deposit sheet to

state that "[Appellant] sent [the $620.50] to Frazer," (5) the $620.50 never reached the Frazer office, and (6) Appellant could not produce a receipt for a Turkey Hill money order from that date, a key preparatory step in sending proceeds to Frazer.

The admission of the spreadsheet also was harmless error as to the eleven other dates in which Appellant's initials appeared on the daily deposit reports (that is, all dates except June 20, June 22, and June 27, 2019). On these eleven dates, the appearance of Appellant's initials, along with his testimony, showed that he closed out the account and was alone when he did it. He took advantage of these circumstances by stealing the proceeds instead of sending them to Axis's main office. After DiMarcantonio confronted him, Appellant could not produce any receipts for Turkey Hill money orders.

With regard to the final three dates (June 20, June 22, and June 27, 2019), because other Axis managers closed the Reading facility's account, the erroneously admitted spreadsheet was the only evidence that Appellant was present at closing and in a position to steal proceeds. Exclusion of the spreadsheet leaves insufficient evidence of theft on these dates. Nevertheless, it is unnecessary to remand for a new trial. The court graded Appellant's offense as a third-degree felony by finding that he stole a total of $2,983.44 on fifteen dates. *See* 18 Pa.C.S.A. § 3903(b) (theft of between $2,000.00 and $100,000.00 is third-degree felony). If the total funds missing on June 20, 22 and 27 ($333.08), are subtracted from the amount of

Appellant's theft total of $2,983.44, the grading of Appellant's offense remains the same, since the revised total of $2,650.36 still exceeds the minimum threshold for conviction of a third-degree felony. Thus, any error in admitting this evidence was harmless as to the grading of Appellant's offense. Even when this evidence is excluded, the grading of this offense as a third-degree felony remains intact.

Only one error concerning Appellant's restitution requires further proceedings. The erroneous admission of the spreadsheet resulted in the finding that Appellant was liable for restitution of $333.08 as to June 20, 22, and 27 of 2019. We direct the court to reduce Appellant's restitution by $333.08, from $2,983.44 to $2,650.36.

Judgment of sentence affirmed except for amount of Appellant's restitution. Case remanded for further proceedings on restitution as directed above. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2021

- 19 -